774 A.2d 501

MICHELLE PALANQUE, PLAINTIFF–APPELLANT,
v. MARGARET LAMBERT–WOOLLEY, M.D.,
DEFENDANT–RESPONDENT.

Argued January 29, 2001—Decided June 21, 2001.

*David P. Corrigan,* argued the cause for appellant (*Hobbie, Corrigan, Bertucio & Tashjy,* attorneys; *Mr. Corrigan* and *Michael R. Hobbie,* on the brief).

*Richard A. Grossman,* argued the cause for respondent (*Grossman, Kruttschinitt, Heavey & Jacob,* attorneys).

*William L. Gold,* submitted a brief on behalf of amicus curiae, Association of Trial Lawyers—New Jersey (*Bendit Weinstock,* attorneys; *Mr. Gold* and *Abbott S. Brown,* on the brief).

The opinion of the Court was delivered by

PORITZ, C.J.

■ This case is substantially like *Hubbard v. Reed,* 168 *N.J.* 387, 774 *A.*2d 495 (2001), also decided today. We rely therefore on much of what we said in *Hubbard* in holding that an affidavit of merit is not required in a common knowledge malpractice case.

# I

On December 12, 1996, plaintiff Michelle Palanque sought medical treatment from defendant Dr. Margaret Lambert–Woolley because plaintiff was experiencing mennorhagia, a heavy menstrual bleeding. Defendant ordered a BhCG test to determine whether plaintiff was pregnant, a possible cause of her condition, but misread the test results and determined that plaintiff was pregnant when she was not. After a subsequent ultrasound test did not confirm plaintiff's pregnancy, defendant ordered another BhCG test that, again, confirmed plaintiff was not pregnant. Yet defendant misread the results again, and this time mis-diagnosed an ectopic pregnancy.[1] She recommended surgery and plaintiff

---

[1] In an ectopic pregnancy, the implantation and development of a fertilized ovum takes place outside of the uterus. *The American Heritage Stedman's Medical Dictionary* 252 (1995).

underwent both a dilation and curettage procedure and a laparoscopy.[2] Those procedures revealed that plaintiff was not pregnant.

Plaintiff retained an attorney to investigate whether she had an actionable malpractice claim against defendant. The attorney obtained plaintiff's medical records and discovered that defendant had read the BhCG test results as 1145 and 1421, numbers that were actually the specimen identification numbers on the laboratory report. The records were submitted for evaluation to Dr. Albert G. Thomas who confirmed that defendant had read the identification numbers incorrectly as the test results. Dr. Thomas issued a report, dated January 23, 1998, stating that defendant Lambert–Woolley had deviated from the standard of care and concluding that "the misreading as positive of the pregnancy tests [led] to the incorrect diagnosis of ectopic pregnancy" and "[t]his deviation led to the performance of surgery which was not needed." In October 1998, after plaintiff had filed a complaint and after the time for filing an affidavit of merit had passed, defendant admitted in response to requests for admissions that the BhCG test results were "now known" to be less than 5.0 MIU/ML, but that her earlier "understanding was that the ... reading was 1145 [and 1421] MIU/ML." Defendant also admitted that she "believed the lab reports were consistent with ectopic pregnancy or moler pregnancy."

On November 2, 1998, defendant moved to dismiss plaintiff's complaint with prejudice for failure to file an affidavit of merit. In response, Dr. Thomas affirmed his January 1998 report, a jurat was added, and the affidavit, dated November 17, 1998, was served on defendant before the court heard arguments on the motion to dismiss. The court dismissed plaintiff's complaint with prejudice

---

2 Dilation and curettage is a "surgical procedure in which the cervix is expanded using a dilator and the uterine lining scraped with a curette." *The American Heritage Stedman's Medical Dictionary* 231–32 (1995). A laparoscopy is a procedure in which a slender, tubular medical instrument is used to visually examine the interior of a patient's abdomen. *Id.* at 266, 453.

nonetheless because her affidavit of merit had not been filed within 120 days of defendant's answer.

The Appellate Division affirmed, denying plaintiff's claims that extraordinary circumstances prevented her from filing an affidavit of merit and, in the alternative, that she was not required to file an affidavit of merit under an exception to the statute for common knowledge cases, that is, cases in which malpractice can be determined without the aid of expert testimony. *Palanque v. Lambert–Woolley*, 327 *N.J.Super.* 158, 162, 164, 742 *A.*2d 1002 (2000). The court found unpersuasive plaintiff's claim that extraordinary circumstances existed because she obtained an expert report prior to filing suit and filed an affidavit of merit before the statute of limitations expired. *Id.* at 160–61, 163, 742 *A.*2d 1002. The court further found that counsel's inadvertent failure to file an affidavit was not an extraordinary circumstance. *Id.* at 164, 742 *A.*2d 1002.

On the issue whether an affidavit is required in a common knowledge malpractice case, the Appellate Division "assum[ed], without deciding" that a malpractice case in which the jury can determine negligence without the aid of expert testimony does not require an affidavit of merit. *Id.* at 162, 742 *A.*2d 1002. However, the court concluded that plaintiff would need expert testimony "to explain that the surgery was not medically necessary and to explain the impact of the misreading of the laboratory report." *Ibid.* Without that testimony, the Appellate Division did not believe that plaintiff could survive a motion to dismiss at the end of trial. *Id.* at 162–63, 742 *A.*2d 1002. Because expert testimony was required, the court held that the case fell outside of a common knowledge exception to the Affidavit of Merit Statute.

We granted certification on October 4, 2000, 165 *N.J.* 602, 762 *A.*2d 217 and now reverse.

## II

Before this Court, plaintiff argues that the Appellate Division erred when it denied her claim of extraordinary circumstances.

She contends that she substantially complied with the statute by obtaining an expert report prior to the commencement of litigation. By seeking early review by an expert she ensured that her claim had merit and fulfilled the legislative intent underlying the statute, the curtailment of frivolous litigation. Plaintiff argues in the alternative that this is a common knowledge case and therefore does not require an affidavit of merit.

Defendant maintains that the Appellate Division correctly decided that plaintiff's case does not meet either the extraordinary circumstances standard or the common knowledge exception, if one exists. Defendant reasons that the Legislature deliberately chose not to include a common knowledge exception because the nature of the claim might not become known until well beyond sixty or 120 days after a defendant's answer. If common knowledge could be asserted after the time for filing an affidavit had passed, the purpose of the statute—to eliminate frivolous litigation early—could be circumvented.

We now reverse. Although we agree with the Appellate Division that plaintiff's claims of extraordinary circumstances and substantial compliance should be denied, we disagree with the panel's determination that plaintiff cannot proceed with her case under a common knowledge theory generally described today in *Hubbard, supra,* 168 *N.J.* at 389, 774 *A.*2d 495.

## III

■ The Affidavit of Merit Statute provides:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

[*N.J.S.A.* 2A:53A-27.]

The statute was enacted as part of a tort reform package designed to "strike[ ] a fair balance between preserving a person's right to sue and controlling nuisance suits." Office of the Governor, *News Release* 1 (June 29, 1995). In professional malpractice actions plaintiffs are required to provide an affidavit from an appropriate licensed professional attesting to the merit of plaintiffs' claims. That requirement was intended by the Legislature to curtail frivolous litigation without preventing access to the courts for meritorious claims. Peter Verniero, Chief Counsel to the Governor, Report to the Governor on the Subject of Tort Reform (Sept. 13, 1994).

■ A plaintiff must file an affidavit of merit within sixty days of a defendant's answer, but may file after sixty days and up to 120 days of the answer for good cause shown. *N.J.S.A.* 2A:53A-27; *Burns v. Belafsky*, 166 *N.J.* 466, 470–71, 766 *A.*2d 1095 (2001). If a plaintiff fails to file the affidavit within 120 days, her complaint will be dismissed with prejudice unless extraordinary circumstances prevented the filing. *Alan J. Cornblatt, P.A. v. Barow*, 153 *N.J.* 218, 247, 708 *A.*2d 401 (1998). Plaintiff filed Dr. Thomas's affidavit of merit well after the 120 day period had elapsed.

### A

First, we briefly address plaintiff's claim that she has demonstrated extraordinary circumstances and should be allowed to file an affidavit of merit out-of-time. Plaintiff contends that because she obtained an expert prior to filing suit, and provided an affidavit within the time frame of the applicable statute of limitations, she has met the extraordinary circumstances standard. Plaintiff's attorney has represented to the Court that the failure to file an affidavit was the result of simple inadvertence. In *Burns*, we found it unnecessary to discuss whether attorney inadvertence constituted extraordinary circumstances. However, the Appellate Division in that case considered the issue and concluded that

" 'carelessness, lack of circumspection, or lack of diligence on the part of counsel are not extraordinary circumstances which will excuse missing a filing deadline.' " *Burns v. Belafsky*, 326 *N.J.Super.* 462, 470, 741 *A.*2d 649 (1999) (quoting *Hyman Zamft & Manard v. Cornell*, 309 *N.J.Super.* 586, 593, 707 *A.*2d 1068 (App. Div.1998)). Implicit in our holding in *Burns* was our agreement with the Appellate Division on that issue, *i.e.*, that attorney inadvertence will not support the extraordinary circumstances standard set forth in *Cornblatt, supra*, 153 *N.J.* at 247, 708 *A.*2d 401.

■ Nor has plaintiff substantially complied with the statute. The doctrine of substantial compliance is used by courts to "avoid technical defeats of valid claims," *Zamel v. Port of New York Auth.*, 56 *N.J.* 1, 6, 264 *A.*2d 201 (1970), and requires: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute." *Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 353, 771 *A.*2d 1141 (2001). In *Galik, supra*, the Court found that there had been substantial compliance with the statute where plaintiff served unsworn expert reports on the defendants eight months prior to litigation. *Id.* at 355, 771 *A.*2d 1141. The Court also found substantial compliance in *Fink v. Thompson*, where the defendant was served with an affidavit that did not name him, but where he was on notice of the claim against him because the plaintiff had provided an expert report that discussed the defendant's role in the alleged malpractice. 167 *N.J.* 551, 564, 772 A.2d 386 (2001).

■ In both *Galik, supra*, and *Fink, supra*, the plaintiffs took a series of steps that notified the defendants about the merits of the malpractice claims filed against them. Here, no such action was taken. Plaintiff obtained an expert report but did not provide the report or an affidavit to defendant. The action taken by plaintiff falls short of meeting the elements of substantial compliance. We

find, therefore, that plaintiff has neither presented a sustainable claim of extraordinary circumstances, nor substantially complied with the statute. Disposition of this case therefore rests on whether plaintiff can rely on a common knowledge exception to the Affidavit of Merit Statute.

## B

In *Hubbard, supra*, decided today, we held that a plaintiff is not required to file an affidavit of merit in a common knowledge malpractice case, a case in which " 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.' " 168 *N.J.* at 394, 774 *A.*2d 495 (quoting *Estate of Chin v. Saint Barnabas Med. Ctr.*, 160 *N.J.* 454, 469, 734 *A.*2d 778 (1999)). In a common knowledge case, whether a plaintiff's claim meets the threshold of merit can be determined on the face of the complaint. Because defendant's careless acts are quite obvious, a plaintiff need not present expert testimony at trial to establish the standard of care. *Chin, supra*, 160 *N.J.* at 469–70, 734 *A.*2d 778. In other words, because the issue is not "peculiarly within the knowledge of a medical ... practitioner," the case is treated as an ordinary negligence action in which a jury can determine without the aid of experts whether a defendant acted with reasonable care. *Id.* at 469, 470, 734 *A.*2d 778. As we said in *Hubbard, supra*, requiring an affidavit of merit in such a case is not necessary to achieve the primary goal of the statute, that is, to weed out meritless malpractice lawsuits at an early stage and to prevent frivolous litigation. Indeed, recognition of the common knowledge exception allows meritorious claims to move forward without the added, and in those cases unnecessary, cost of hiring an expert to execute an affidavit when that expert will not testify at trial.

Here, plaintiff has asserted that she will rely on the common knowledge doctrine. She points out that medical records she

obtained prior to filing suit reveal that Dr. Lambert Woolley's diagnosis was based on a mistaken reading of the laboratory report. It would appear that a person of ordinary understanding and experience can judge whether defendant acted with reasonable care when she misread the specimen identification numbers as the test results and erroneously determined that plaintiff had an ectopic pregnancy. Yet, the court below believed that

> some expert proof would be required to explain that the surgery was not medically necessary and to explain the impact of the misreading of the laboratory report in this regard. Plaintiff does not explain how she would actually present admissible evidence of malpractice or professional negligence. Nor does she explain how she would survive a motion at the end of her case in the absence of such testimony.

[*Palanque, supra,* 327 *N.J.Super.* at 162–63, 742 *A.2d* 1002 (footnotes omitted).]

We note, as has the Appellate Division, *id.* at 163, n. 4, 742 *A.2d* 1002 that defendant has acknowledged misreading plaintiff's laboratory results. Plaintiff's theory is that defendant's deviation from generally accepted medical standards was a proximate cause of her injuries and that both the deviation and causation are inferable by a jury without expert testimony. In those circumstances, we leave to plaintiff the presentation of her case and decline to anticipate whether she can survive a motion to dismiss when that presentation is complete.

Finally, we emphasize the concerns expressed today in *Hubbard, supra,* that "the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial." 168 *N.J.* at 397, 774 *A.2d* 495. In this case, extraordinary circumstances have not been demonstrated and an affidavit may not be submitted out of time. If, at some later point, an expert for defendant provides evidence refuting plaintiff's common knowledge case, plaintiffs will be permitted to respond with expert testimony for rebuttal purposes. *See Tousignant v. St. Louis County,* 615 *N.W.2d* 53, 60 (Minn. 2000) (stating that plaintiff was not required to file expert affidavit in common knowledge case even though "expert testimony may ... at some point be necessary to refute evidence presented by

respondents at trial"). An expert will not be permitted to testify in plaintiff's case-in-chief.

## IV

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for further proceedings.

*Opposed*—None.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.