968 A.2d 752 (2009)
406 N.J. Super. 568
PARAGON CONTRACTORS, INC., Plaintiff,
v.
PEACHTREE CONDOMINIUM ASSOCIATION, Successor-in-Interest to Washington Woods Condominium Association, Defendant/Third-Party Plaintiff-Appellant,
v.
Raymond Holmes, Emac Holmes, Peter Holmes, Paragon Contractors Group, Inc., Third-Party Defendants, and
Key Engineers, Inc., Third-Party Defendant-Respondent.
DOCKET NO. A-0408-08T3.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 2009.
Decided April 27, 2009.
*753 Nash Law Firm, LLC, for appellant (Alan A. Reuter, Stratford, on the brief).
Thompson, Becker & Bothwell, LLC, Cherry Hill, for respondent (John M. Becker, of counsel; John H. King, on the brief).
Before Judges FISHER, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reject the argument that the trial court's failure to schedule the case management conference, required by Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 836 A.2d 779 (2003), tolled the time to file or otherwise excused the malpractice claimant's failure to timely file an affidavit of merit. In so holding, we express our disagreement with that part of the decision of another panel, Saunders v. Capital Health System, 398 N.J.Super. 500, 510, 942 A.2d 142 (App.Div.2008), which held to the contrary.

I
The Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29, requires a claimant "in a malpractice action to serve on a defendant within 120 days of receipt of the answer an expert's sworn statement attesting that there exists a `reasonable probability' that the professional's conduct *754 fell below acceptable standards." Ferreira, supra, 178 N.J. at 146, 836 A.2d 779. The purpose of the Affidavit of Merit statute is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997). Despite its simple and clear requirements, the Affidavit of Merit statute "has generated a tide of litigation." Ferreira, supra, 178 N.J. at 146, 836 A.2d 779.
The Court has repeatedly observed that embodied in the Affidavit of Merit statute is a "dual purpose""to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Hubbard v. Reed, 168 N.J. 387, 395, 774 A.2d 495 (2001). As a result, the Court has declared that "[t]he failure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, supra, 178 N.J. at 146-47, 836 A.2d 779; see also N.J.S.A. 2A:53A-29 (declaring that the failure to timely provide the affidavit required by the Act "shall be deemed a failure to state a cause of action"); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 244, 708 A.2d 401 (1998) (holding that "[t]he violation giving rise to the dismissal goes to the heart of the cause of action as defined by the Legislature"). The Court, however, has also recognized "two equitable remedies that temper the draconian results of an inflexible application of the statute." Ferreira, supra, 178 N.J. at 151, 836 A.2d 779. First, the Court has held that a complaint must not be dismissed if plaintiff has "substantially complied" with the Act. Palanque v. Lambert-Woolley, 168 N.J. 398, 405-06, 774 A.2d 501 (2001). And, second, the dismissal may be without prejudice if there are "extraordinary circumstances to explain noncompliance." Ferreira, supra, 178 N.J. at 151, 836 A.2d 779.
Because the substantial compliance doctrine is based "on justice and fairness," and "designed to avoid technical rejection of legitimate claims," it requires that the claimant show a lack of prejudice to the opposing party, a "series of steps" taken to comply with the statute, a "general compliance" with the purpose of the statute, "reasonable notice" of the claim, and "a reasonable explanation why there was not a strict compliance with the statute." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352-53, 771 A.2d 1141 (2001). Substantial compliance has been found: where claimant's counsel, before initiating suit, provided defendants' insurers with a detailed expert report that established the legitimacy of the complaint, id. at 357-58, 771 A.2d 1141; where a timely served affidavit of merit and extensive expert's report clearly focused on the conduct of the defendant even though the report and affidavit did not name the defendant doctor, Fink v. Thompson, 167 N.J. 551, 561-64, 772 A.2d 386 (2001); and where the claimant timely served a certification instead of an affidavit, Cornblatt, supra, 153 N.J. at 239-42, 708 A.2d 401. On the other hand, the Court has found a lack of substantial compliance where the claimant was in possession of an expert's report before filing suit but failed to provide defendant with the report or an affidavit within the 120-day time period, Palanque, supra, 168 N.J. at 405, 774 A.2d 501, and where plaintiff's counsel was in possession of an affidavit of merit within ten days of the filing of the answer but took no steps to serve it until after the passage of 120 days from the filing of the answer, Ferreira, supra, 178 N.J. at 152-53, 836 A.2d 779.
*755 In Ferreira, the Court observed that it has "yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute," but emphasized that "attorney inadvertence" and "counsel's carelessness in misfiling defendant's answer and failing to calendar" the matter do not constitute extraordinary circumstances. Ibid.
The Court has also recognized that a defendant's conduct in seeking enforcement of the Affidavit of Merit statute may at times render it inequitable to dismiss a malpractice suit. In concluding that the Affidavit of Merit statute was "not intended to encourage gamesmanship or a slavish adherence to form over substance," the Court held in Ferreira that a defendant should be estopped from claiming entitlement to dismissal where the claimant "possessed the affidavit of merit almost at the time the clock began to run and served the affidavit before defendants filed a motion to dismiss." Id. at 153-54, 836 A.2d 779. The Court summarized the rule it announced in Ferreira in the following way:
In a case where the plaintiff has in hand an affidavit within the 120-day statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit. If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply. That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.
[Id. at 154, 836 A.2d 779.]
The Court has also applied the doctrines of estoppel and laches in holding that dismissal is not warranted where the defendant participated in discovery and waited a considerable period of time after passage of the 120-day deadline before seeking dismissal pursuant to the Affidavit of Merit statute. Knorr v. Smeal, 178 N.J. 169, 178-81, 836 A.2d 794 (2003).
Finally, in an effort to ensure that disputes about a claimant's compliance with the Affidavit of Merit statute "do not become sideshows to the primary purpose of the civil justice system," the Court in Ferreira "propose[d] that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions." Ibid.[1] As explained,
Expediting the schedule in malpractice cases will further the intent of our Best Practice rules: to resolve potential discovery problems before they become grist for dueling motions. At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant. If an affidavit has been served, defendant will be required to advise the court whether he has any *756 objections to the adequacy of the affidavit. If there is any deficiency in the affidavit, plaintiff will have to the end of the 120-day time period to conform the affidavit to the statutory requirements. If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law.
... The painful experience of our affidavit of merit jurisprudence reveals the compelling need for such conferences at an early stage before problems arise. Indeed, our proposal serves the very goal of case management; it will "assist discovery ... [and] promote the orderly and expeditious progress of the case." R. 4:5B-2. We trust that early intervention in the discovery process will permit the Affidavit of Merit statute to fulfill its true purposeto bring a swift demise to frivolous lawsuits while allowing meritorious ones to have their day in court.
[Id. at 154-55, 836 A.2d 779.]
In her separate opinion in Ferreira, Justice Long "deem[ed] it unlikely that the court's innovation" of requiring management conferences prior to the expiration of the 120-day period "will forestall a new round of litigation"; instead, she saw that innovation "as simply moving the field of battle to a different location." Id. at 159, 836 A.2d 779. The matter at hand constitutes a skirmish on this other battlefield.

II
The complaint filed in this matter by plaintiff Paragon Contractors, Inc. sought damages from defendant Peachtree Condominium Association regarding certain unpaid fees allegedly due Paragon for construction work performed at The College of New Jersey. Peachtree filed an answer as well as a third-party complaint against Key Engineers, Inc., alleging that Key performed incomplete and defective design work in connection with the project.
Key filed its answer to the third-party complaint on October 2, 2007. Key simultaneously filed a certification requesting a change in the track assignment to reflect that the claim brought against it was a "professional liability matter"; although Peachtree later asserted that it did not receive from Key a copy of this certification, it did acknowledge that the cover letter it received, along with Key's answer, referenced the certification and, also, that Key's case information statement identified the claim as a malpractice action. Indeed, Peachtree did not dispute that it understood, as did Key, that its third-party complaint alleged malpractice.
When no affidavit of merit was served within 120 days of the filing of the answer, Key moved for dismissal pursuant to the Affidavit of Merit statute. In response, Peachtree argued that it had substantially complied with the statute and that exceptional circumstances warranted relief from the consequences of its delay in serving an affidavit of merit. As to the latter point, Peachtree filed a certification executed by a legal assistant employed by its counsel's law firm in which the assistant acknowledged that it was well understood that Key viewed the third-party action as sounding in malpractice, that Key had so indicated in its case information statement, and that Key had submitted to the clerk a certification that requested a change of the track assignment due to the presence of this malpractice claim. The legal assistant's certification further indicated that she spoke with someone in the civil case management office "regarding requirements pertaining to an Affidavit of Merit." The legal assistant recounted in her certification that she was advised by the case manager's office "that an Affidavit would need to be filed prior to a Case Management *757 Conference, which had not yet been scheduled," and that "if the Affidavit was not filed by the date of such a conference, then one could be filed with consent of the parties."
In seeking the denial of the motion to dismiss, Peachtree argued that it had "acted with diligence to communicate with the [c]ourt and ascertain as to whether and when an affidavit of merit would be required." Peachtree also submitted an affidavit of merit on February 21, 2008, three weeks after the motion to dismiss was filed and after the 120-day deadline had passed.
The motion judge found a lack of any evidence to support a claim of substantial compliance and rejected the argument that there were extraordinary circumstances that would permit the late filing of the affidavit of merit. The judge also distinguished a decision that had been rendered by this court during the pendency of the motion, Saunders, supra, 398 N.J.Super. at 510, 942 A.2d 142, viewing more favorably an earlier unreported decision of this court.
Peachtree moved for reconsideration, arguing that Ferreira and Saunders "must be read as imposing a tolling of the 120 day period where a case management conference has not taken place." The motion judge denied this motion as well.
Peachtree moved for leave to appeal. We denied that motion, but the Supreme Court granted leave to appeal and summarily remanded the matter to this court for a consideration on the merits. 196 N.J. 459, 957 A.2d 1169 (2008).

III
In its appeal, Peachtree has invoked a host of equitable theories to support its contention that dismissal based upon the Affidavit of Merit statute was erroneous. Specifically, Peachtree argues:
I. THE MOTION JUDGE ERRED IN DISMISSING THE COMPLAINT BECAUSE NO MANDATORY CASE MANAGEMENT CONFERENCE WAS HELD OR EVEN SCHEDULED IN THIS CASE.
II. KEY IS NOT ENTITLED TO AND IS EQUITABLY ESTOPPED FROM THE RELIEF OF DISMISSAL BASED UPON A MOTION AND AN ARGUMENT ASSERTING THAT THERE IS NO RULE REQUIRING CASE MANAGEMENT CONFERENCES, CONTRARY TO AUTHORITY THAT INCLUDES THE SUPREME COURT, THE APPELLATE DIVISION AND JUDGE PRESSLER.
III. KEY IS NOT ENTITLED TO AND IS EQUITABLY ESTOPPED FROM THE RELIEF OF DISMISSAL ON A MOTION TO DISMISS WHERE KEY ATTEMPTS TO DISPARAGE THE MERITS OF PEACHTREE'S CASE WHILE AT THE SAME TIME ASSERTING THAT IT IS ENTITLED TO DISMISSAL REGARDLESS OF THE MERITS.
IV. THE ACTION AGAINST KEY SHOULD NOT HAVE BEEN DISMISSED BECAUSE PEACHTREE RELIED ON INFORMATION THAT THE AFFIDAVIT OF MERIT WAS NOT DUE PRIOR TO THE CASE MANAGEMENT CONFERENCE.
V. THE MOTION JUDGE ERRED BY RELYING UPON AS WELL AS CITING AN UNPUBLISHED OPINION.
VI. THE MOTION JUDGE ERRED BY DISMISSING THE CLAIMS AGAINST PEACHTREE IN LIGHT OF SAUNDERS AND APPLICABLE LEGAL AUTHORITY.
VII. ALTHOUGH NOT REQUIRED, SUBSTANTIAL COMPLIANCE AND EXTRAORDINARY CIRCUMSTANCES *758 ARE PRESENT IN THE WITHIN CASE AND THE FAILURE OF THE MOTION JUDGE TO SO FIND, EVEN IF SUCH AN ANALYSIS WAS REQUIRED, WAS ERROR.
VIII. THE TRIAL COURT ERRED IN RULING THAT CLAIMS OF PEACHTREE CANNOT SURVIVE WITHOUT AN AFFIDAVIT OF MERIT IN THE FACE OF EXCEPTIONS SUCH AS RES IPSA LOQUITOR AND COMMON SENSE.
IX. FUNDAMENTAL AND LONGSTANDING JUDICIAL PRINCIPLES REQUIRE THAT THE WITHIN CASE AGAINST THIRD PARTY DEFENDANT KEY PROCEED ON ITS MERITS AS, DESPITE ASSERTIONS BY KEY TO THE CONTRARY, THE AFFIDAVIT OF MERIT STATUTE DOES NOT APPLY AND CANNOT BE APPLIED TO STRIP THE COURTS OF THEIR AUTHORITY AND THEIR ROLE TO APPLY SUCH PRINCIPLES TO EFFECT THE ENDS OF JUSTICE AND STATUTORY INTENT AND TO PROHIBIT KEY FROM OBTAINING AN ABSURD RESULT ALLOWING KEY TO ESCAPE AN ADJUDICATION ON THE MERITS THAT PREVENTS PEACHTREE FROM HAVING ITS DAY IN COURT.
With the exception of Points I and VIII, we find insufficient merit in Peachtree's arguments to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). But for Peachtree's contentions regarding the impact of the trial court's failure to schedule a case management conference, which we will discuss at greater length, the arguments urged by Peachtree in seeking to avoid the consequences of its failure to timely serve an affidavit of merit are without substance.
Briefly, there is nothing in the record to suggest that Peachtree did anything that would warrant application of the doctrine of substantial compliance. There is no evidence to indicate that Peachtree was in possession of the affidavit of merit within the 120-day period or that it had taken any steps to advise Key of the nature and substance of the malpractice claim that it had asserted. And, Key did not wait to file its motion to dismiss until after it had been served with the affidavit of merit, as in Ferreira, supra, 178 N.J. at 153, 836 A.2d 779 (holding that in that circumstance a defendant "should be estopped from claiming entitlement to dismissal as a remedy"), nor did Key continue to participate in discovery for a considerable period of time after the passage of the 120-day period before moving for dismissal, as in Knorr, supra, 178 N.J. at 178-82, 836 A.2d 794 (holding that defendant's failure to act on the lack of an affidavit of merit for fourteen months following the filing deadline warranted a rejection of defendant's attempt to enforce the deadline through the application of estoppel and laches).
We also find no merit in Peachtree's argument that extraordinary circumstances were presented to excuse its failure to comply with the Affidavit of Merit statute. In support, Peachtree refers to the conversation between its counsel's legal assistant and the case manager's office, which occurred approximately sixty days after Key filed its answer and to which we have already referred. Counsel's ceding of his own judgment about the requirements of the Affidavit of Merit statute to the clerk's office cannot form the basis for equitable relief from the consequences of his inertia. The Court has clearly held that what it means by "extraordinary circumstances" does not encompass "counsel's carelessness." Ferreira, supra, 178 N.J. at 152-53, 836 A.2d 779. Here, the *759 certification of counsel's legal assistant reveals that Peachtree's representatives were quite conscious of the running of the time period set by the Affidavit of Merit statute and yet were apparently content to take no action once assured by the case manager's office that the affidavit of merit would not be due until a case management conference was scheduled, if ever.
In addition, this case presents none of the circumstances referred to in Ferreira and Knorr that would justify a finding that it would be inequitable for Key to have sought dismissal.
In essence, but for Peachtree's tolling argument and its reliance on Saunders, this case is no different from those that typically warrant dismissal. As the Court held in Ferreira, "[i]f defense counsel files a motion to dismiss after the 120-day deadline"as here"and before plaintiff has forwarded the affidavit"as here"the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply"as here. Id. at 154, 836 A.2d 779.
For these reasons, we reject the bulk of Peachtree's arguments in this appeal and turn to its contention that the trial court's failure to schedule a case management conference either tolled the 120-day period or otherwise excused Peachtree's failure to comply with the Affidavit of Merit statute. We will thereafter consider Peachtree's argument that the lack of an affidavit of merit could not form the basis for dismissal of its malpractice action against Key because it can prove its claim against Key through common knowledge or a res ipsa loquitur theory.

IV
The Ferreira Court's direction that, "going forward," case management conferences are to be scheduled in malpractice actions generates the controversy presented by this appeal. Id. at 147, 836 A.2d 779. The Court mandated such conferences to deal with discovery issues and affidavit-of-merit problems before they ripen into the myriad difficulties that have spawned what Justice Albin referred to, in speaking for the Court, as "a new area of jurisprudence"an area in which "this Court and our appellate courts have grappled with the derelictions of plaintiffs' counsel, who have filed well-grounded complaints, but have neglected to file technically correct or timely affidavits." Id. at 146, 836 A.2d 779.
The Court directed that the conference "be held within ninety days of the service of an answer in all malpractice actions," id. at 154, 836 A.2d 779, and explained the conference's purpose:
At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant. If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit. If there is any deficiency in the affidavit, plaintiff will have to the end of the 120-day time period to conform the affidavit to the statutory requirements. If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law.
[Id. at 155, 836 A.2d 779.]
Undoubtedly, this approach has eliminated some litigation over the Affidavit of Merit statute.[2] But, sadly, as Justice Long predicted *760 in her separate opinion in Ferreira, this innovation has now triggered other skirmishes on a different battlefield. Id. at 159, 836 A.2d 779.
Here, Peachtree argues that it was under no duty to file an affidavit of merit until the trial court scheduled the case management conference required by Ferreira. We reject Peachtree's attempt to insulate its counsel's carelessness through the trial court's mistake in failing to schedule a case management conference.
Recently, another panel of this court reversed a dismissal by relying on the trial court's failure to schedule the case management conference required by Ferreira. Saunders, supra, 398 N.J.Super. at 510, 942 A.2d 142.[3] There, the record indicated that the claimant's attorney had possession of an affidavit of merit but neglected to serve it within 120 days of the filing of the answer. The panel held that "[c]ounsel's inadvertent failure to serve the [affidavit of merit] would have been discovered had the required case management conference been conducted," and concluded that "it would be unfair to expose an attorney to potential professional liability where the court did not schedule the required conference within ninety days of the defendant's answer." Ibid.
Certainly Saunders is distinguishable from the present case. Here, unlike Saunders, there is no evidence to suggest that Peachtree was in possession of an affidavit of merit and simply neglected to file it within 120 days of Key's answer; moreover, the record demonstrates that Peachtree's counsel was acutely aware of the obligation to comply with the Affidavit of Merit statute but chose instead to cede its obligation to ascertain the statute's deadline by relying upon a discussion, which occurred sixty days after Key's answer was filed, between a legal assistant and the case manager's office. It would perhaps suffice to say that even under Saunders's approach, counsel's carelessness here should not be excused. But, because we are of the opinion that Ferreira did not intend that the conference would be deemed a tolling devicea view that could only further complicate the resolution of future affidavit-of-merit controversieswe find it necessary to express our disagreement with Saunders.
We reject the argument that a trial court's failure to schedule the conference required by Ferreira tolls the statutory deadline for two essential reasonsthe Court's decision in Ferreira neither imposed the early conference requirement as a means of altering or amending the statute, nor, in adopting this innovation, did the Court reveal any intention other than to continue to enforce and respect the 120-day deadline crafted by the Legislature.
First, the conference requirement imposed was not a product of judicial surgery on an inadequate or imprecise statute but was proposed by the Court only as a panacea for attorney negligence. The Court, in this regard, cited the adage "that an ounce of prevention is worth a pound of cure" in holding that "going forward, we will require case management conferences in *761 the early stage of malpractice actions." Ferreira, supra, 178 N.J. at 147, 836 A.2d 779. Had the Court intended this innovation as a new appendage to the statute, it undoubtedly would have clearly stated that intent. Absent a clear indication from the Court that the trial court's failure to schedule a conference causes a tolling of the statutory deadline, we are disinclined to adopt such a drastic departure from the legislative intent. Accordingly, in our view, Saunders went too far when it implicitly held that the statutory deadline is tolled until the conference is scheduled.
Second, the timing for the conference mandated by Ferreira reveals the Court's continued respect for the Legislature's deadline. It is telling in this regard that the Court directed that the conference occur "within ninety days" of the filing of the answer. Ferreira, supra, 178 N.J. at 154, 836 A.2d 779. That choice was undoubtedly purposeful, allowing for compliance with the statute and the rectification of any doubts about the sufficiency of affidavits of merit before the passage of 120 days from the filing of the defendant's answer. Indeed, the Court explained that the early conference would permit resolution of any affidavit-of-merit deficiencies "by the end of the 120-day time period." Id. at 155, 836 A.2d 779. We view this as compelling evidence that we must continue to adhere to the deadline chosen by the Legislature in the Affidavit of Merit statute.
Ultimately, we reject Saunders's holding because we find it unreasonable to conclude thatafter so carefully explaining over the course of so many years the manner in which the statute should applythe Court would have vastly revamped the process by adding the conference requirement as a device to effect the triggering or tolling of the statutory deadline. We can find no evidence in Ferreira that, in calling for early case management conferences, the Court had engaged in judicial surgery of the statute and engrafted a tolling device that would stay the deadline until the occurrence, if ever, of the conference.
The Court revealed as much when it held that "[w]e cannot rewrite the statute, eliminating the time afforded to the diligent attorneys who follow its mandate, to create a fail-safe system for the few neglectful attorneys who do not." Id. at 153-54, 836 A.2d 779.[4] Indeed, the Court viewed its decision in Ferreira as having "place[d] strong incentives on both plaintiffs' and defense counsel to act diligently." Id. at 154, 836 A.2d 779. By exalting the status of the conference requirement to the role of tolling device, Saunders appears to have removed the incentive for diligence urged by Ferreira, placed the burden for triggering the resolution of affidavit-of-merit problems on our civil case managers, and implicitly rendered irrelevant the 120-day deadline imposed by our Legislature.
Accordingly, we state our disagreement with Saunders and reject the argument that a trial court's failure to schedule the case management conference required by Ferreira tolls the statutory deadline or otherwise excuses a malpractice claimant's noncompliance with the Affidavit of Merit statute. For this and the other reasons we have expressed, we conclude that *762 Peachtree failed to comply with the Affidavit of Merit statute and, barring its ability to prosecute its malpractice claim on res ipsa loquitur or common knowledge grounds, see, e.g., Hubbard, supra, 168 N.J. at 390-91, 774 A.2d 495, its third-party action cannot stand.

V
We lastly turn to an issue not impacted by the application of the Affidavit of Merit statute. Peachtree argued in the trial court, and has argued here in its Point VIII, that its claim of malpractice may be proven without resort to expert testimony.
Other than the conclusory arguments from both parties as to the viability of Peachtree's claim against Key in the absence of expert testimony, little of substance has been provided. The parties instead have chiefly disputed the propriety of dismissal on affidavit-of-merit grounds. Without knowing more about the nature of Peachtree's claim against Key, we deem it appropriate to remand for further consideration on this point.

VI
For all these reasons, we affirm the orders under review insofar as they resolved the affidavit-of-merit issues in Key's favor, but we vacate the order that dismissed the third-party action and remand for further consideration of Peachtree's common-knowledge argument.
Affirmed in part; vacated in part. We do not retain jurisdiction.
NOTES
[1] Although the Court, at this point in its opinion, only "propose[d]" that a case management conference be conducted in all malpractice actions, id. at 154, 836 A.2d 779, earlier in the opinion the Court stated that "going forward, we will require case management conferences in the early stage of malpractice actions to ensure compliance with the discovery process, including the Affidavit of Merit statute, and to remind the parties of the sanctions that will be imposed if they do not fulfill their obligations," id. at 147, 836 A.2d 779 (emphasis added). In another case decided the same day as Ferreira, the Court described its opinion in Ferreira as "requir[ing]" the aforementioned case management conference in all malpractice actions. Knorr, supra, 178 N.J. at 182, 836 A.2d 794 (emphasis added).
[2] In light of concern for the possibility of unnecessary conferences, the Administrative Director of the Courts issued a Notice to the Bar in 2004 indicating that parties could waive the conference through the submission of a proposed consent order "indicating that all counsel agree to waive the conference, acknowledging that the Affidavit of Merit has been provided, and stating that the defendants waive any objections to the Affidavit's adequacy." Saunders, supra, 398 N.J.Super. at 510, 942 A.2d 142 (quoting Waiver of Affidavit of Merit Conference, 176 N.J.L.J. 1006 (2004)).
[3] The parties have also referred us to an unpublished opinion of this court that reaches a different conclusion than Saunders as to the significance of the trial court's failure to schedule the conference.
[4] We are also troubled by the consequences of Saunders's implicit holding that the 120-day deadline does not elapse so long as the case management conference is not scheduled. If that is so, then when does the deadline elapse if the conference is never scheduled? Without a conference and without an affidavit of merit, how much delay in the process of weeding out non-meritorious claims and efficiently managing meritorious claims should the judicial system tolerate?