997 A.2d 982

PARAGON CONTRACTORS, INC., PLAINTIFF, v. PEACHTREE CONDOMINIUM ASSOCIATION, SUCCESSOR–IN–INTEREST TO WASHINGTON WOODS, CONDOMINIUM ASSOCIATION, DEFENDANT/THIRD–PARTY PLAINTIFF–APPELLANT, v. RAYMOND HOLMES, EMAC HOLMES, PETER HOLMES, PARAGON CONTRACTORS GROUP, INC., THIRD–PARTY DEFENDANTS, AND KEY ENGINEERS, INC., THIRD–PARTY DEFENDANT–RESPONDENT.

Argued February 22, 2010—Decided June 28, 2010.

Rivera–Soto, J., filed a concurring opinion.

———

*Alan A. Reuter,* argued the cause for appellant (*Nash Law Firm,* attorneys).

*John M. Becker,* argued the cause for respondent (*Thompson Becker & Bothwell,* attorneys; *Mr. Becker* and *John H. King,* on the briefs).

Justice LONG delivered the opinion of the Court.

At issue in this appeal is whether the failure to hold a conference pursuant to *Ferreira v. Rancocas Orthopedic Associates,* 178 *N.J.* 144, 836 *A.*2d 779 (2003), tolls the filing period provided in the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, and whether the dismissal of the third-party complaint in this matter was justified. The *Ferreira* conference was created to remind parties of their statutory obligations and thus avoid the dismissal of meritorious claims through inadvertence. It was never intended, nor could it have been, as an overlay on the statute that would effectively extend the legislatively prescribed filing period. Thus, it is not a tolling device.

However, because there is obviously confusion in the ranks over the scheduling of the *Ferreira* conference and the effect of its omission on the requirements of the Affidavit of Merit statute, we have concluded that relief should be afforded to the parties in the limited circumstances of this case.

I.

The facts are detailed in the decision of the Appellate Division. *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n,* 406 *N.J.Super.* 568, 968 *A.*2d 752 (App.Div.2009). In brief, plaintiff Paragon Contractors, Inc. (Paragon) sued defendant Peachtree Condominium Association (Peachtree) for payment for construction work it performed on Peachtree's premises. Peachtree answered and counterclaimed for damages for Paragon's failure to properly complete drainage work at the site. Peachtree also filed a third-party complaint against Key Engineers, Inc. (Key), an entity that

was hired to inspect and supervise Paragon's performance. With its third-party complaint, Peachtree filed a Case Information Statement (CIS), *see R.* 4:5–1(a) and (b)(1), which identified the matter as a construction case and did not respond to the question: "Is this a professional malpractice case?"

In its answer, Key raised the Affidavit of Merit statute as a separate defense. Further, in its CIS, Key characterized the case as one involving professional malpractice. Nevertheless, because the case originally was filed as a breach of contract action, the matter remained categorized by the civil case management staff as a construction case and was assigned to that track. As a result, Key's counsel forwarded a Certification of Good Cause to Change Track Assignment, requesting that the case be moved from the construction track to the professional liability malpractice track. Peachtree's counsel acknowledged having received the cover letter, but not the certification.

On January 31, 2008—more than 120 days after Key filed its answer to Peachtree's third-party complaint and before Peachtree filed an affidavit of merit or a case management conference had been scheduled—Key filed a motion to dismiss the third-party action. The basis for Key's motion was Peachtree's failure to provide an affidavit of merit within the time periods defined in *N.J.S.A.* 2A:53A–27. On February 21, 2008, before the motion hearing but outside the statutory period, Peachtree filed an affidavit of merit. In defense of the late filing, Peachtree argued that the failure to schedule a *Ferreira* conference tolled the time frames in the Affidavit of Merit statute.[1]

The trial judge rejected that argument and dismissed Peachtree's third-party complaint and all cross-claims against Key based on the untimeliness of the affidavit. The Appellate Division

---

[1] Peachtree also argued that it was lulled into inaction by the incorrect track assignment of the case and by misstatements by judiciary employees regarding the *Ferreira* conference. Like the courts below, we view those contentions as unavailing and do not consider them in reaching our conclusion.

affirmed, rejecting "Peachtree's attempt to insulate its counsel's carelessness through the trial court's mistake in failing to schedule a case management conference." *Paragon, supra,* 406 *N.J.Super.* at 581, 968 *A.*2d 752.[2] We granted certification, 200 *N.J.* 500, 983 *A.*2d 1109 (2009), and, for the reasons that follow, now reverse.

## II.

The Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, prescribes in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> [*N.J.S.A.* 2A:53A–27.]

The statute applies to all actions for damages based on professional malpractice. *Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth.,* 344 *N.J.Super.* 343, 347, 781 *A.*2d 1116 (App.Div.2001) (holding Affidavit of Merit statute applied to defendant's malpractice counterclaim).

The core purpose underlying the statute is "to require plaintiffs ... to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of the litigation." *In re Petition of Hall,* 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997) (quoted in *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998), *modified in part by, Ferreira, supra,* 178 *N.J.* at 154, 836 *A.*2d 779). Importantly, "there is no legislative interest in barring

---

[2] The Appellate Division also vacated the trial court's order that dismissed the third-party complaint. The panel remanded "for further consideration of Peachtree's common-knowledge argument." *Paragon, supra,* 406 *N.J.Super.* at 585, 968 *A.*2d 752.

meritorious claims brought in good faith." *Ferreira, supra,* 178 *N.J.* at 150–51, 836 *A.2d* 779 (quoting *Galik v. Clara Maass Med. Ctr.,* 167 *N.J.* 341, 359, 771 *A.2d* 1141 (2001)). Indeed, "[t]he legislative purpose was not to 'create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.' " *Id.* at 151, 836 *A.2d* 779 (quoting *Mayfield v. Cmty. Med. Assocs., P.A.,* 335 *N.J.Super.* 198, 209, 762 *A.2d* 237 (App. Div.2000)).

Under the statute, an affidavit should be filed within sixty days of the filing of the answer. *N.J.S.A.* 2A:53A–27. However, if provided within sixty-one to 120 days after the answer is filed, the affidavit will be deemed timely so long as (1) leave to file is sought and (2) good cause is established. *Burns v. Belafsky,* 166 *N.J.* 466, 475–77, 766 *A.2d* 1095 (2001). Attorney inadvertence is considered good cause within that sixty-one to 120–day period. *Id.* at 478, 766 *A.2d* 1095.

Neglecting to provide an affidavit of merit after the expiration of 120 days has different consequences and generally requires dismissal with prejudice because the absence of an affidavit of merit strikes at the heart of the cause of action. *Cornblatt, supra,* 153 *N.J.* at 247, 708 *A.2d* 401.

However, we have recognized equitable remedies that "temper the draconian results of an inflexible application of the statute"—extraordinary circumstances and substantial compliance.[3] *Ferreira, supra,* 178 *N.J.* at 151, 836 *A.2d* 779. Where extraordinary circumstances are present, a late affidavit will result

---

[3] A plaintiff's complaint will not be dismissed for a technical violation of the statute if the plaintiff took other actions that substantially complied with the statute's requirements. *See, e.g., Fink v. Thompson,* 167 *N.J.* 551, 772 *A.2d* 386 (2001) (medical malpractice defendant received copy of affidavit which did not specifically name him, but also received plaintiff's detailed expert report of incident, which focused on defendant's conduct); *Galik, supra,* 167 *N.J.* 341, 771 *A.2d* 1141 (2001) (medical malpractice defendant's insurance carrier provided with detailed expert report as part of settlement discussions prior to filing of complaint).

in dismissal without prejudice. *See, e.g., Tischler v. Watts,* 177 *N.J.* 243, 246–47, 827 *A.*2d 1036 (2003) (dismissing without prejudice where plaintiff's expert wrote deficient affidavit and plaintiff's original attorney failed to discover it in time due to diagnosis of terminal cancer and death).

"Although we have yet to define the full scope of extraordinary circumstances as an equitable remedy for failure to comply with the statute, we do know that attorney inadvertence is not such a circumstance entitling plaintiff to a remedy of dismissal of a complaint *without* prejudice." *Ferreira, supra,* 178 *N.J.* at 152, 836 *A.*2d 779 (citing *Palanque v. Lambert–Woolley,* 168 *N.J.* 398, 405, 774 *A.*2d 501 (2001)) (emphasis in original).

Because an attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice, *Ferreira, supra,* 178 *N.J.* at 154, 836 *A.*2d 779, in *Ferreira* we developed a prophylactic measure to encourage the timely filing of affidavits. Id. at 154–55, 836 *A.*2d 779. In doing so, we reaffirmed the fundamental purpose of the Affidavit of Merit statute: "to flush out insubstantial and meritless claims that have created a burden on innocent litigants and detracted from the many legitimate claims[.]" *Id.* at 154, 836 *A.*2d 779. Thus, we instituted "an accelerated case management conference [to] be held within ninety days of the service of an answer in all malpractice actions." *Ibid.* The predictive assumption underlying the conference was that it would "ensure that discovery related issues, such as compliance with the Affidavit of Merit statute, do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial[.]" *Ibid.* At the conference, the parties and the court are to identify any failure to comply with the Affidavit of Merit statute in time to correct it within the statutory time limit:

> If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit. If there is any deficiency in the affidavit, plaintiff will have to the end of the 120-day time period to conform the affidavit to the statutory requirements. If no affidavit has been

served, the court will remind the parties of their obligations under the statute and case law.

[*Id.* at 155, 836 *A.*2d 779.]

In ruling in *Ferreira,* we stated:

[t]his case brings to mind the adage that an ounce of prevention is worth a pound of cure. Therefore, going forward, we will require case management conferences in the early stage of malpractice actions to ensure compliance with the discovery process, including the Affidavit of Merit statute, and to remind the parties of the sanctions that will be imposed if they do not fulfill their obligations.

[*Id.* at 147, 836 *A.*2d 779.]

Although *Ferreira* conferences should be held as a matter of course, they may be omitted "when the Affidavit of Merit has been provided by plaintiff and all defendants have waived any objections to its adequacy." *Waiver of Affidavit of Merit Conference,* 176 *N.J.L.J.* 1006 (2004).[4]

### III.

At issue here is what effect the failure to hold a *Ferreira* conference will have on the time limits prescribed in the statute. The answer is none. It is true that we created and mandated the *Ferreira* conference to "remind the parties of the sanctions that will be imposed if they do not fulfill their obligations." *Ferreira, supra,* 178 *N.J.* at 147, 836 *A.*2d 779. Our clear purpose was to help attorneys and litigants to avoid the dismissal of meritorious claims.

However, it is equally true that parties are presumed to know the law and are obliged to follow it. *See Emanuel v. McNell,* 87 *N.J.L.* 499, 504, 94 *A.* 616 (E. & A.1915) ("Everyone is presumed to know the law. Ignorance standing alone can never be the basis of a legal right.") (internal quotation marks and

---

4 We note that our concurring colleague's attack on *Ferreira* comes in a case in which the issue was neither raised, briefed, nor argued by the parties or any other stakeholder here or in the courts below. In that connection, it is well settled that we will decline to consider such an issue for the first time on appeal. *DYFS v. M.C.,* 201 *N.J.* 328, 990 *A.*2d 1097 (2010). We note as well that the "anecdotal evidence" in which the concurrence is rooted has no basis whatsoever in this record.

citations omitted); *State v. Moran*, 408 *N.J.Super.* 412, 425, 975 A.2d 480 (App.Div.2009) (reiterating legal maxim that "every person is conclusively presumed to know the law, statutory and otherwise" (quoting *Graham v. N.J. Real Estate Comm'n*, 217 *N.J.Super.* 130, 138, 524 A.2d 1321 (App.Div.1987))).

Further, our creation of a tickler system to remind attorneys and their clients about critical filing dates plainly cannot trump the statute. In other words, the absence of a *Ferreira* conference cannot toll the legislatively prescribed time frames.

 We note, however, that there apparently has been a lack of unanimity in our courts over that conclusion. Indeed, the Appellate Division is divided over the question of whether the failure to hold a *Ferreira* conference prevents dismissal with prejudice under the Affidavit of Merit statute. *Compare Saunders ex rel. Saunders v. Capital Health Sys.*, 398 *N.J.Super.* 500, 510–11, 942 A.2d 142 (App.Div.2008) (permitting plaintiff's lawsuit to proceed to trial because trial judge did not schedule *Ferreira* conference within ninety days of defendant's answer and plaintiff's counsel had executed affidavit of merit before filing complaint), *with Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 *N.J.Super.* 510, 542, 983 A.2d 604 (App.Div.2009) (determining that Court's requirement of *Ferreira* conference does not "vest[ ] any of the litigants with any additional rights" that would excuse untimely filing of affidavit of merit). We take from that divergence that lawyers also may have been unclear regarding the import of the failure to hold a *Ferreira* conference and, incorrectly as it turns out, may have assumed that the absence of the conference provided a safe harbor from the Affidavit of Merit statute's requirements.

That confusion counsels lenience in this case. No doubt, Peachtree's counsel was not as assiduous as he could or should have been. Indeed, more attention would have forestalled what occurred here. In the context of this case, however, the confusion we have recognized constitutes an extraordinary circumstance that may have caused counsel to slumber when he should have acted.

Because the Affidavit of Merit statute is not intended as a trap for the unwary, we will not permit it to be used in these circumstances to dismiss a claim before its merits have been adjudged.

Nevertheless, lawyers and litigants should understand that, going forward, reliance on the scheduling of a *Ferreira* conference to avoid the strictures of the Affidavit of Merit statute is entirely unwarranted and will not serve to toll the statutory time frames. Indeed, it is only the confusion over the role of the *Ferreira* conference—which now has been addressed and clarified—that warrants relief in this case.

## IV.

The judgment of the Appellate Division is reversed. The case is remanded to the trial judge for proceedings consistent with this opinion.

Justice RIVERA–SOTO, concurring.

Because the source of the confusion surrounding the obligation of defendant/third party plaintiff Peachtree Condominium Association to comply with the requirements of the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, may lie squarely at this Court's own doorstep, I am required to concur with the reasoning and conclusions thoughtfully expressed in Justice Long's opinion, cautioning again, as the majority does, that "reliance on the scheduling of a *Ferreira[v. Rancocas Orthopedic Associates,* 178 *N.J.* 144, 836 *A.*2d 779 (2003) ] conference to avoid the strictures of the Affidavit of Merit statute is entirely unwarranted and will not serve to toll the statutory time frames." *Ante* at 426, 997 *A.*2d at 988.

I write separately for two reasons. First, it is deeply troubling that, as a result of the relief today ordered, third-party defendant Key Engineers, Inc. effectively will be denied the specific right granted to it by law: its statutory entitlement to either the receipt of a timely and proper Affidavit of Merit or the dismissal of the claims against it. Although that dilemma must be acknowledged,

candor also requires that we acknowledge that the confusion generated was of this Court's own making. That confession of error leads to my second reason.

The imposition of the *Ferreira* conference obligation is yet another example of well-intentioned but fundamentally misguided judicial tinkering. The source of the confusion that animates the relief today granted to yet another lawyer unable to comply with elementary statutory requirements—*Ferreira* itself—has condoned a continuing, albeit somewhat quelled stream of lawyer disregard for the mandates of the Affidavit of Merit statute. In each instance, those coddled few, who seek to excuse their basic inability to comply with a glaringly clear and straightforward legislative mandate, thrash wildly about, seeking to lay blame everywhere but where it properly belongs: in the hands of the non-complying lawyer.[1] As *Ferreira* itself concedes, we established *Ferreira* conferences in order to address a specific evil: "a tide of litigation and a [then] new area of jurisprudence [addressing] the derelictions of plaintiffs' counsel, who ... have neglected to file technically correct or timely affidavits." *Ferreira, supra,* 178 *N.J.* at 146, 836 *A.*2d 779. Now, fifteen years after the Affidavit of Merit statute was enacted and seven years after *Ferreira,* that tide should have abated and the judicial need to protect a handful of lawyers from their own professional shortcomings should come to a well-deserved end.

There is a parallel, institutional reason that commands that we jettison *Ferreira's* mandate. *Ferreira* requires that our courts schedule a prophylactic case management conference to identify and correct the failure of counsel to comply with the simple

---

[1] For proof of that proposition, one need look no further than this case, where counsel for defendant/third-party plaintiff sought to shift the blame for his failure to file a correct Case Information Statement, *see R.* 4:5–1(a); App. XII–B1—one that should have identified the third-party complaint as one pleading professional malpractice—to generic advices purportedly received from court personnel, an assertion the majority very politely discards as "unavailing." *Ante* at 420 n. 1, 997 *A.*2d at 984 n. 1.

requirements of the Affidavit of Merit statute. *Id.* at 154–55, 836 A.2d 779. Although the parties have not addressed the point, anecdotal evidence strongly supports the view that the obligation to schedule and conduct *Ferreira* conferences is observed only in its breach: the vast majority of lawyers understand their professional obligations; it is only the wayward few who seem stubbornly unable to comply with this simple task; and, as a practical matter, our trial courts cannot, and as a consequence do not, pander to the few at the expense of the many.[2] Yet, *Ferreira* imposes a system-wide obligation, designed solely to protect the less-than-competent from what may be a well-earned malpractice claim.

It is, at its very least, pathetic that our judicial system must cater to the lowest-common-denominator practitioners. The goals of a properly constructed judicial system must be practical, but they also should be hortatory, seeking that all aspire to practice at a level greater than at minimum requirements. In that spirit, the time has come to conclude that the mandatory *Ferreira* conference has outlived whatever usefulness it may have had, and thus that the requirement should be voided. That result avoids any future "confusion" and places all lawyers on fair notice of what should be intuitively obvious: that they must comply with the clear dictates of law or suffer the consequences. In the final analysis, our citizenry is entitled to a continually improving system of justice, and not some ersatz construct where judges are diverted from their duties to baby-sit and spoon-feed those either too lazy or too unwilling to comply with their clearly defined obligations.

---

[2] Admittedly, the parties have not squarely sought the relief I deem appropriate here: the elimination of *Ferreira* conferences. However, it is self-evident that the remedy best suited to cure the confusion this Court itself created is to jettison the source of that confusion. Also, the facts here—together with the unbroken stream of Affidavit of Merit cases that clog our dockets—convincingly prove the futility of the judicially mandated *Ferreira* conferences. Even the most glancing look at the litigation landscape conclusively demonstrates the folly of failing to demand strict adherence to a simple and straightforward legislative command and, instead, creating a safety net wayward lawyers still ignore.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.