827 A.2d 1036

ALYSSA TISCHLER, PLAINTIFF–APPELLANT, v. DAVID C. WATTS, M.D., DEFENDANT–RESPONDENT, AND JOHN DOE PARTNERSHIPS 1–10, JOHN DOE INCORPORATED 1–10, JOHN DOE PROFESSIONAL CORPORATIONS 1–10, JOHN DOE PROFESSIONAL ASSOCIATIONS, FICTITIOUS AND UNIDENTIFIED PARTNERSHIPS, CORPORATIONS, PROFESSIONAL CORPORATIONS, PROFESSIONAL ASSOCIATIONS, INDIVIDUALLY, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS.

Argued September 24, 2002—Decided July 24, 2003.

*Carl D. Poplar* argued the cause for appellant (*Poplar & Eastlack*, attorneys; *Mr. Poplar* and *Jeffrey A. Ahren*, on the brief).

*James P. Savio* argued the cause for respondent.

PER CURIAM.

In November 1995, David C. Watts, M.D., performed a surgical procedure known as reduction mammoplasty on plaintiff who was fifteen years old at the time. Some three-and-a-half years later, plaintiff returned to Dr. Watts with ailments resulting from the reduction surgery, including permanent loss of the ability to breastfeed, loss of tactile sensation, scarring, and disfigurement. Subsequently, on November 24, 1999, plaintiff hired an attorney, Dale Verfaillie Chant, and initiated a medical malpractice action against Dr. Watts. The complaint alleged that Dr. Watts's deviation from the standard of care in performing the reduction mammoplasty caused plaintiff's complications.

In preparation for the lawsuit, Chant contacted Stanley F. Schoenbach, M.D., a plastic surgeon licensed to practice in New York. Dr. Schoenbach provided Chant with his curriculum vitae,

which chronicled an impressive career in plastic surgery and listed academic appointments and research publications. Chant sent Dr. Schoenbach a copy of plaintiff's medical records and an Affidavit of Merit for Dr. Schoenbach to sign if, after reviewing those records, he determined that there was a reasonable probability that Dr. Watts's care fell below acceptable standards. Dr. Schoenbach authored and signed a new Affidavit of Merit omitting any reference to his current licensure, and Chant filed it in February 2000. Shortly thereafter, in early to mid-March 2000, Chant was diagnosed with advanced lung cancer and immediately underwent aggressive radiation and chemotherapy treatments. John C. Eastlack, an attorney and close friend of Chant's since law school, voluntarily took over Chant's cases, covering appearances and proceedings during her brief but terminal illness, and acting as Attorney Trustee for Chant's law practice after her death on June 12, 2000. The necessary paperwork to transfer plaintiff's representation from Chant to Eastlack was completed sometime in late July. In any event, Eastlack filed his entry of appearance on August 11, 2000.

On July 20, 2000, however, Dr. Watts had filed a motion to dismiss plaintiff's complaint based on an alleged faulty Affidavit of Merit. Defendant had argued that Dr. Schoenbach's affidavit was uncertified and improperly drafted, in violation of the Affidavit of Merit Statute, *N.J.S.A.* 2A:53A-26 to -29. On further review, plaintiff's new attorney discovered that the New York Department of Health had revoked Dr. Schoenbach's license prior to his signing the Affidavit of Merit. As a result of the fraud perpetrated by Dr. Schoenbach, and his artful rewriting of the Affidavit of Merit, the document submitted by Chant was neither an affidavit nor a certification. Consequently the trial court dismissed plaintiff's malpractice action with prejudice for failure to comply with the statute, and the Appellate Division affirmed.

The Affidavit of Merit Statute was designed to " 'bring common sense and equity to the state's civil litigation system,'" *Cornblatt v. Barow,* 153 *N.J.* 218, 228, 708 *A.*2d 401 (1998)

(quoting Office of the Governor, *News Release* 1 (June 29, 1995)), by establishing certain procedural requirements for plaintiffs who wished to maintain professional malpractice actions. *Id.* at 228–29, 708 *A.*2d 401. Those requirements—generally, the filing of an affidavit by a licensed professional early in the litigation attesting to a deviation from the standard of care—were intended "to curtail frivolous litigation without preventing access to the court for meritorious claims," *Palanque v. Lambert–Woolley,* 168 *N.J.* 398, 404, 774 *A.*2d 501 (2001) (citing Peter Verniero, Chief Counsel to the Governor, Report to the Governor on the Subject of Tort Reform (Sept. 13, 1994)). In furtherance of that goal, we have held that "when a plaintiff fails to comply with a statute that creates a cause of action with both substantive and procedural requirements, . . . a dismissal for failure to comply with procedural requirements should be with prejudice unless there are 'extraordinary circumstances.'" *Cornblatt, supra,* at 246, 708 *A.*2d 401 (citing *Hartsfield v. Fantini,* 149 *N.J.* 611, 614–15, 695 *A.*2d 259 (1997)). Where such circumstances do exist, however, fairness dictates that we dismiss the action without prejudice. *Id.* at 247, 695 *A.*2d 259.

After *Cornblatt,* our courts followed Justice Handler's lead and adopted the *Hartsfield* criterion for determining extraordinary circumstances, namely, "a fact-sensitive [case-by-case] analysis." *See, e.g., Barreiro v. Morais,* 318 *N.J.Super.* 461, 471, 723 *A.*2d 1244 (App.Div.1999) (finding hospital's failure to timely provide legible medical records delayed filing of Affidavit of Merit such that hearing on "extraordinary circumstances" warranted); *Burns v. Belafsky,* 326 *N.J.Super.* 462, 469–70, 741 *A.*2d 649 (App.Div. 1999), *aff'd,* 166 *N.J.* 466, 766 *A.*2d 1095 (2001) (implying "lack of diligence on the part of counsel" insufficient to constitute "extraordinary circumstances"). More specifically, in *Palanque, supra,* we had occasion to indicate that attorney inadvertence would not constitute extraordinary circumstances. 168 *N.J.* at 405, 774 *A.*2d 501. In that case, the lower court had determined that the plaintiff's failure to obtain and file an Affidavit of Merit before the statute of limitations had run was due solely to her attorney's

oversight. There, we made explicit what we had implied in *Burns*—that "attorney inadvertence will not support the extraordinary circumstances standard." *Id.* at 405, 774 *A.*2d 501.

This is not a case of mere attorney inadvertence. Indeed, if ever there were a case in which extraordinary circumstances justified a failure to comply with procedural requirements, this is it. A fact-sensitive analysis here inexorably leads us to the conclusion that these circumstances are precisely the sort of "extraordinary" circumstances meant under the standard. By all accounts, Ms. Chant was a competent attorney who, in the ordinary course, may well have discovered and rectified the deficiencies in Dr. Schoenbach's Affidavit of Merit within the 120 days permitted by the statute. *N.J.S.A.* 2A:53A–27; *Burns, supra,* at 465–66, 741 *A.*2d 649. But for the immediate and debilitating effects of her aggressive radiation and chemotherapy treatments, she certainly would have had an opportunity to comply with the statutory requirements. It would be counter to the fundamental purpose of the Affidavit of Merit Statute to dismiss this case with prejudice when such compelling circumstances exist and when the underlying case may be a meritorious lawsuit that, except for those circumstances, would have been timely filed.

The decision of the Appellate Division is reversed. The dismissal of plaintiff's case shall be without prejudice.

*For reversal*—Chief Justice PORITZ and Justices COLEMAN, LONG, LaVECCHIA, ZAZZALI and ALBIN—6.

*Opposed*—None.