3 A.3d 518 (2010)
416 N.J. Super. 1
SHAMROCK LACROSSE, INC., Plaintiff-Appellant,
v.
KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP; and Obermeyer Rebmann Maxwell & Hippel, LLP, Defendants-Respondents, and
National IP Rights Center, LLC, Defendant.
Docket No. A-5730-08T3
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2010.
Decided June 14, 2010.
*519 Jamil N. Alibhai (Munck Carter, LLP) of the Texas bar, admitted pro hac vice, Dallas, TX, argued the cause for appellant (Mescall & Acosta, attorneys, Union City; Mr. Alibhai, of counsel; James C. Mescall, West Orange, on the brief).
John L. Slimm, Cherry Hill, argued the cause for respondent Klehr, Harrison, Harvey, Branzburg & Ellers, LLP (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Dante C. Rohr, on the brief).
Gloria B. Cherry, Livingston, argued the cause for respondent Obermeyer Rebmann Maxwell & Hippel, LLP (Braff, Harris & Sukoneck, attorneys; Ms. Cherry, on the brief).
*520 Before Judges STERN, SABATINO, and J.N. HARRIS.
The opinion of the court was delivered by
SABATINO, J.A.D.
This appeal concerns the applicability of the statutory affidavit of merit requirement, N.J.S.A. 2A:53A-26 to -29, to a malpractice action that plaintiff, a New Jersey company, brought in the Law Division against two law firms. Although the law firms are principally located in Pennsylvania, each of them has bona fide offices in this State, and has one or more partners and associates admitted to the New Jersey bar.
Plaintiff's complaint arises out of allegedly negligent omissions by a patent attorney who had worked, in succession, at the two law firms. The complaint alleges that the patent attorney, who is now deceased, failed to assure that certain renewal fees necessary to maintain plaintiff's patent were paid to the United States Patent and Trademark Office ("the USPTO"). Consequently, the patent expired, and plaintiff was unable to get it reinstated. As a result, plaintiff claims that it suffered economic harm in this State. The trial court dismissed the complaint because plaintiff had not served an affidavit of merit upon defendants in accordance with the time limits prescribed by the statute.
On the circumstances presented by this record, we sustain the Law Division judge's legal conclusion that plaintiff was obligated to serve a timely affidavit of merit upon the defendant law firms. However, we vacate the dismissal order on equitable grounds, particularly because the case law in our State was unsettled to date as to whether an affidavit of merit is required in such circumstances, and the federal decisions on the subject attempting to apply New Jersey law have taken arguably divergent approaches.

I.
Plaintiff, Shamrock Lacrosse, Inc., is a New Jersey corporation that has its principal place of business in East Hanover Township in Morris County. Plaintiff is in the business of manufacturing and selling athletic apparel and equipment, with a particular emphasis on the sport of lacrosse. As part of its business, plaintiff manufactures specialized lacrosse sticks.
Defendant Klehr, Harrison, Harvey, Branzburg & Ellers, LLP ("Klehr"), is a large law firm with its principal offices in Philadelphia, Pennsylvania. Klehr is a limited liability partnership organized under Pennsylvania law. At the times relevant to this action, Klehr maintained a bona fide office in Cherry Hill, New Jersey, where one or more partners and associates admitted to the New Jersey bar principally conducted their law practices. Similarly, defendant Obermeyer Rebmann Maxwell & Hippel, LLP ("Obermeyer"), is a large law firm headquartered in Philadelphia. Obermeyer is also a Pennsylvania limited liability partnership. At the times relevant to this action, Obermeyer likewise maintained a bona fide office in Cherry Hill, where apparently several of its partners and associates admitted in New Jersey principally worked.

A. Plaintiff's Patent and Its Expiration Due To Non-Payment

On August 2, 1994, Ron MacNeil, an inventor, filed a patent application with the USPTO for a lacrosse stick head. The patent, number 5494297, (the "'297 patent") was issued on February 27, 1996. Two months later, in April 1996, MacNeil assigned the rights to the patent to plaintiff.
*521 In August 1997, plaintiff retained a patent attorney, Jeff Navon, Esq., and his law firm, defendant Klehr, to represent it before the USPTO concerning the '297 patent. At that time, another patent attorney, Scott J. Fields, Esq., was also employed at the Klehr firm. Both Navon and Fields worked out of Klehr's offices in Philadelphia. According to a letter in the record from Fields, plaintiff "was referred into [Klehr] via a contact of Jeff Navon and [was], prior to his [Navon's] departure, his client." That same letter from Fields further states that plaintiff specifically retained Klehr "to pursue the matter of [a] reissue application [before the USPTO for the '297 patent]." Plaintiff was pursuing the reissue application to cure a previous defect in the '297 patent, a defect that is not specified in the record or germane to this case.
After Navon departed from Klehr in 1999, Fields assumed the responsibility to represent plaintiff in connection with the reissue patent. At that time, Fields was an attorney licensed to practice before the USPTO, and admitted to the bar of the State of Pennsylvania. Fields also had passed the New Jersey bar examination and was admitted to practice in New Jersey in 1987. However, on October 26, 1989, the Supreme Court of New Jersey declared Fields ineligible to practice because of his non-payment of annual fees to the New Jersey Lawyer's Fund for Client Protection ("Client Protection Fund"), pursuant to Rule 1:20-1 and Rule 1:28-2. Fields did not thereafter cure the non-payment deficiency, so he continued to remain each year after 1989 on the ineligibility list.
In late August 1999, the first maintenance payment on the '297 patent was due in the USPTO office. After it did not receive that required maintenance fee, the USPTO sent a reminder notice in September 1999 to the address that it had on file for the '297 patent. The address was that of inventor MacNeil in Milton, Ontario, a suburb of Toronto.[1]
On February 27, 2000, the '297 patent expired, due to the failure to pay the required maintenance fees to the USPTO. The limited record before us contains no indication of whether Fields was specifically notified of the patent's expiration at that time.
In May 2000, Fields left Klehr and joined Obermeyer, at the latter's Philadelphia offices. The following month, June 2000, Fields filed a notice of change of firm with the USPTO to reflect his new professional affiliation. Subsequently, in January 2001, plaintiff's client file was transferred from Klehr to Obermeyer, where Fields continued to serve as plaintiff's patent attorney.
On April 2, 2002, the USPTO granted an allowance for a reissue of the '297 patent, allowing the cure of the previously-identified defect. Apparently, this administrative action by the USPTO was a mistake, as the '297 patent actually had expired more than two years earlier, in February 2000, because of the non-payment of the maintenance fee.
On October 22, 2002, the USPTO issued patent RE37,894E (the "reissue patent"), ostensibly reissuing the '297 patent. Obermeyer forwarded that reissue patent to plaintiff, along with a letter from Debbie A. Oshansky, a paralegal with the firm. Oshansky's letter advised plaintiff (apparently incorrectly) that the patent remained "in force until October 22, 2019." Her *522 letter also stated to plaintiff that Obermeyer was "not responsible for the payment of annuities," and that "the payment dates have not been entered into [Obermeyer's] computer." Receipt of Oshansky's letter was acknowledged by a return signature of Peter Rogers, plaintiff's company president, on October 30, 2002.
There is no indication in the record, at least as it is presently developed, that any licensed New Jersey attorneys at Klehr or Obermeyer supervised Fields's work on plaintiff's patent. Nor is there any present indication that any other attorney at those firms who had been admitted to the New Jersey bar participated in plaintiff's representation. The record is silent as to which attorney or attorneys supervised Oshansky, the paralegal at Obermeyer who sent plaintiff the October 2002 letter concerning the reissue patent.
Fields left the employ of Obermeyer in 2003 and started his own firm, National IP Rights Center, LLC ("National"), also based in Philadelphia. Plaintiff followed Fields to his new firm, severing its client relationship with Obermeyer.
In August 2003, the second maintenance fee on the '297 patent would have become due, had the patent not expired in February 2000. The grace period for a late payment of that second fee would have expired on February 27, 2004. Evidently this second maintenance fee also was never paid.
On September 26, 2005, Fields's license to practice in New Jersey was administratively revoked by an order of the Supreme Court, pursuant to 2004 amendments to Rule 1:20-1(d) and Rule 1:28-2(c), because Fields had been on the ineligible list for a period of more than seven consecutive years. As a consequence of this revocation, Fields's membership in the New Jersey bar terminated. See R. 1:28-2(c) (providing that "[o]n the entry of a license revocation [o]rder pursuant to this Rule, the attorney's membership in the [b]ar of this State shall cease.")
In January 2007, plaintiff entered into negotiations with a third party on a potential contract involving the '297 patent. During the course of those negotiations, plaintiff discovered that the '297 patent had expired in 2000 and that its reissue patent was therefore invalid.[2] This adverse revelation aborted the contract negotiations between plaintiff and the third party.
Plaintiff then retained separate counselapparently one not affiliated with Fields, Klehr, or Obermeyerto attempt to reinstate the '297 patent with the USPTO. That effort ultimately proved unsuccessful, and plaintiff consequently lost its patent.
On April 23, 2007, Fields died. In the aftermath of Fields's death, National dissolved as an entity.

B. Plaintiff's Complaint, Defendants' Answers and the Ensuing Motions

After losing its patent, plaintiff filed a complaint in the Law Division on June 4, 2008, against Klehr, Obermeyer, and National.[3] Specifically, plaintiff alleged that the law firms: (1) were negligent or grossly negligent in the preparation and protection of plaintiff's intellectual property; (2) *523 breached their contractual obligations to represent plaintiff diligently before the USPTO; (3) committed legal malpractice in not diligently maintaining the '297 patent; and (4) breached their fiduciary duties owed to plaintiff as a client. Plaintiff did not name Fields, or his estate, as a defendant.
Obermeyer filed an answer to plaintiff's complaint on July 29, 2008, asserting seventeen separate defenses. Among those defenses, Obermeyer asserted that plaintiff failed to state a claim, was untimely in its filing of the claim, was comparatively negligent in the actions that resulted in the harm, and that Obermeyer did not deviate "from accepted professional standards."
On September 26, 2008, Klehr filed its own answer to the complaint. Klehr denied plaintiff's substantive allegations. It also presented numerous affirmative defenses, similar to those asserted by Obermeyer. In addition, Klehr filed a demand for an affidavit of merit pursuant to N.J.S.A. 2A:53A-27, and "reserv[ed] the right to move to dismiss based upon plaintiff's failure to file" such an affidavit.
Neither Obermeyer nor Klehr filed a third-party complaint against Fields or his estate.
After three months of discovery, Klehr filed a motion to dismiss plaintiff's complaint for lack of service of an affidavit of merit. The dismissal motion was filed by Klehr on January 9, 2009, some 104 days beyond the date of its answer and well beyond the 60-day affidavit deadline prescribed by N.J.S.A. 2A:53A-27. That same week, Obermeyer, which had answered the complaint 162 days earlier, filed a cross-motion, likewise seeking to have the case dismissed for lack of an affidavit of merit. Both dismissal motions were initially returnable on February 20, 2009.
While the dismissal motions were pending, a partner in the Dallas intellectual property law firm of Munck Carter, P.C., sent letters on behalf of plaintiff to defense counsel for Klehr and Obermeyer, respectively. The letters requested defendants to identify, within their respective firms, the attorney or attorneys admitted to practice law in New Jersey who had engaged in the negligent conduct alleged in plaintiff's complaint. Klehr responded that Fields was the attorney in question, asserting that he was licensed in New Jersey at the time of the relevant events. Klehr further asserted that, as a partnership with several members who were licensed in New Jersey, Klehr itself should be treated as a "licensed person" under the statute.
Obermeyer similarly responded that it qualified as a "licensed person" under the statute, by virtue of its offices in New Jersey and its attorneys who are licensed in this state. Obermeyer did not identify any particular attorney within its offices as the individual responsible for plaintiff's representation.
Plaintiff opposed the dismissal motions, arguing that the Klehr and Obermeyer law firms were not "licensed persons" for which an affidavit of merit was required under N.J.S.A. 2A:53A-27. However, anticipating the possibility that the court might not adopt its legal argument of non-necessity, plaintiff filed a cross-motion on February 12, 2009, provisionally requesting leave to serve an affidavit of merit. The cross-motion was filed 190 days after Obermeyer had filed its answer and 138 days after Klehr had filed its answer, beyond the 120-day maximum extended[4] *524 time period set forth in N.J.S.A. 2A:53A-27.
With its cross-motion, plaintiff supplied an affidavit of merit from John G. Fischer, an attorney who practices intellectual property law. Fischer is a partner in Storm LLP, a law firm in Texas. He is admitted to practice law in Texas, Colorado, the District of Columbia, and also before the USPTO. In his affidavit of merit, Fischer specifically averred that plaintiff's complaint for legal malpractice against both Klehr and Obermeyer, alleging mishandling of the '297 patent, had a "reasonable probability of success." He further attested that "a reasonable probability exists that the care, skill, or knowledge exercised or exhibited by [d]efendants in the treatment, practice, and/or work that is the subject of the Complaint fell outside acceptable professional standards and/or practices."

C. The Motion Judge's Rulings

After initially hearing oral argument on defendants' dismissal motions and plaintiff's cross-motion, the motion judge invited supplemental briefs. Among other things, the supplemental briefs addressed the impact, if any, of the court's failure to convene a case management conference under the Supreme Court's decision in Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 836 A.2d 779 (2003), which could have alerted plaintiff sooner to the potential need for an affidavit. The supplemental briefs also addressed whether the affidavit of merit statute applied to law firms in a situation where the individual lawyer within those firms accused of malpractice is not licensed in New Jersey. Additionally, as requested by the court, the supplemental briefs discussed the pertinent federal statutes and regulations governing the payment of patent maintenance fees.
Upon hearing a second round of oral argument, the motion judge granted defendants' motions to dismiss the complaint for failure to serve an affidavit of merit. Simultaneously, the judge also denied plaintiff's cross-motion for leave to serve a late affidavit.
In his bench ruling, the motion judge concluded that the defendant law firms should be treated as "licensed persons" under a "sensible construction" of N.J.S.A. 2A:53A-27. He noted that it would be "entirely anomalous" to allow a plaintiff to evade the affidavit requirement by suing only the professional entities (here the law firms), and not the principals, partners, shareholders, and employees of those firms who actually provided the professional services in question. The judge found that the law firms should have the protection of the affidavit requirement when they are sued in New Jersey, even though the lawsuit grew out of the alleged negligence of an attorney who was licensed by, and physically located in, another state.
The motion judge rejected plaintiff's contention that the "common knowledge" exception to the affidavit of merit statute applied. The judge observed that "legally there is a complex statutory matrix involving these [renewal] fees ... under the patent laws as administered to patent grants from the [USPTO]." Given that complex regulatory scheme, the judge ruled that the applicable standards of care for a patent attorney were "complicated" and "not something ... that would be within the ken of the average lay person."
The judge disagreed with plaintiff's argument that the complaint fell, at least in part, outside of the scope of N.J.S.A. 2A:53A-27 because it substantively asserted various other causes of action in addition to legal malpractice. The judge described those other claims as "simply labels for a cause of action, the essence *525 of which is one sounding in legal [mal]practice." Citing the Supreme Court's opinion in Couri v. Gardner, 173 N.J. 328, 801 A.2d 1134 (2002), the judge found that the nature of the legal inquiry involved in all of the claims asserted by plaintiff was "whether [defendants] would have met their duty of care, whatever that may have been, the standard of care in advising a client in the field of patent and trademark law, patent law here specifically[,] within the general heading of intellectual property." Consequently, the judge found that the affidavit of merit obligation applied to the entire complaint.
Lastly, the judge determined that no "exceptional circumstances" were present to excuse the lateness of plaintiff's affidavit of merit, notwithstanding the lack of a Ferreira conference. In this regard, the judge noted plaintiff's "steadfast view until the 136th day after the ... due date for the affidavit of merit ... that there was no obligation on its part to file and serve an affidavit of merit." The judge reasoned that allowing plaintiff to serve a belated affidavit in this case would be inconsistent with the policies of the statute.
Based on these various determinations, the motion judge dismissed plaintiff's complaint with prejudice, as to both Klehr and Obermeyer.

D. The Present Appeal

Plaintiff now appeals. Most fundamentally, plaintiff contends that the motion judge erred in his interpretation and application of the affidavit of merit statute. It argues that the defendant law firms do not fit the statutory definition of "licensed persons" because neither of those entities are, nor could they be, "an attorney admitted to practice law in New Jersey" under N.J.S.A. 2A:53A-26(c).
Plaintiff further emphasizes that Fields, whose inattentive conduct allegedly caused the loss of its patent, was not authorized to practice law in New Jersey at the time of the operative events. Plaintiff urges that the defendant law firms should not derivatively benefit under the statute from Fields's prior admission to the New Jersey bar, given his inactivated status.
Furthermore, plaintiff reiterates on appeal its contentions that the need for any affidavit is excused here under the common knowledge exception, and also should be excused because of equitable considerations.
In response, defendants maintain that the motion judge's interpretation of N.J.S.A. 2A:53A-26 to -29, and his application of the affidavit of merit requirement to the circumstances of this case, was legally correct. They further argue that the strong public policies underlying the statute mandate that they and other comparable law firms headquartered outside of New Jerseyhaving responsibly established bona fide offices in this State managed by attorneys duly admitted to the New Jersey bardeserve the full protections of the statute, at least in malpractice cases brought against them in our state courts.

II.

A.
First enacted by the Legislature in 1995, the affidavit of merit statute imposes a special requirement upon plaintiffs bringing lawsuits claiming malpractice or negligence by certain enumerated professionals. See N.J.S.A. 2A:53A-26 to -29. The basic objective of the statute is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997) (citing *526 Peter Verniero, Chief Counsel to the Governor, Report to the Governor on the Subject of Tort Reform (Sept. 13, 1994)); see also Couri, supra, 173 N.J. at 333, 801 A.2d 1134. "The statute's essential goal is to put to rest unmeritorious and frivolous malpractice lawsuits at an early stage of litigation while allowing worthy claims to proceed through discovery and, if warranted, to trial." Knorr v. Smeal, 178 N.J. 169, 176, 836 A.2d 794 (2003) (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 404, 774 A.2d 501 (2001)).
To satisfy these policy objectives, "a plaintiff must file an affidavit of merit within 120 days of the filing of the answer or face dismissal of the complaint with prejudice, absent some equitable justification." Knorr, supra, 178 N.J. at 176, 836 A.2d 794 (citing Tischler v. Watts, 177 N.J. 243, 246, 827 A.2d 1036 (2003)). "The salutary benefit to both sides in eliminating a non-genuine malpractice claim early on [by requiring an affidavit of merit] is the conservation of resources. Plaintiffs and defendants should not be dragged through an expensive and burdensome discovery process... if the plaintiffs cannot produce an expert to support their claims." Ibid. "In this way, the resources and time of the parties will not be wasted by the continuation of unnecessary litigation." Ibid.
N.J.S.A. 2A:53A-27 specifically prescribes that:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
[N.J.S.A. 2A:53A-27 (emphasis added).]
A "licensed person" is particularly defined in the statute as a defendant on an enumerated list of professionals, including "any person who is licensed as ... an attorney admitted to practice law in New Jersey." N.J.S.A. 2A:53A-26(c) (emphasis added). If a plaintiff does not file and serve a timely affidavit of merit as required under the statute, "it shall be deemed a failure to state a cause of action," thereby subjecting the malpractice complaint to dismissal. N.J.S.A. 2A:53A-29.

B.
Plaintiff asserts that Klehr and Obermeyer are not "licensed persons" under N.J.S.A. 2A:53A-27 entitled to the beneficial screening function provided by an affidavit of merit. Plaintiff argues that neither Klehr nor Obermeyer qualifies as an "attorney admitted to practice law in New Jersey" under N.J.S.A. 2A:53A-26(c). Rather, plaintiff contends, Klehr and Obermeyer are legal organizations which, although staffed by individual attorneys, do not hold licenses to practice law. Plaintiff argues that the words in the statute, when given their plain meaning, protect only individual licensed attorneys, not the business entities for whom those attorneys work. Because Klehr and Obermeyer are not covered by the statute, plaintiff's complaint against those law firms therefore was improperly dismissed for non-compliance with the affidavit requirement.
*527 On the other hand, defendants emphasize that even though they are not, as entities, literally "admitted to practice law" in New Jersey, they have properly established bona fide offices to serve clients in this State. Several of the attorneys who regularly work in those bona fide offices are admitted members of the New Jersey bar. By fully complying with the rules of practice to serve the public in New Jersey, defendants contend that they deserve to be treated under N.J.S.A. 2A:53A-27, at least functionally if not literally, in the same manner as an individual lawyer who is a member of the New Jersey bar.

C.
Although a handful of reported opinions in our State applying the affidavit of merit statute have involved law firm defendants, and some decisions from the federal courts have dealt with similar or related issues, no New Jersey precedent has squarely resolved the applicability of the affidavit requirement to a scenario such as the one presented here.
In Hyman Zamft & Manard, L.L.C. v. Cornell, 309 N.J.Super. 586, 591-95, 707 A.2d 1068 (App.Div.1998), we permitted litigants asserting malpractice claims against both a law firm and an attorney associated with that firm to tender a late affidavit of merit because of equitable factors. We did not treat the defendant law firm in Hyman Zamft any differently under the statute than the individual attorney co-defendant, nor did we discuss whether or not the firm constituted a "licensed person." Ibid.
Additionally, in Diver v. Gross, Hanlon, Truss & Messer, P.C., 317 N.J.Super. 547, 550-51, 722 A.2d 623 (Law Div.1998), a legal malpractice case brought against a defendant law firm and two co-defendant lawyers within that firm, the court considered only the timing of the allegedly negligent conduct, so as to determine whether the conduct occurred before or after the effective date of the affidavit of merit statute. In its analysis, Diver treated the law firm and the individual lawyers synonymously, without explicitly considering whether the firm should be considered beyond the purview of the statute. Ibid.
Federal cases applying the affidavit of merit of statute are somewhat more instructive on the "entity defendant" issue, although the cases are not uniform. For example, in Martin v. Perinni Corp., 37 F.Supp.2d 362 (D.N.J.1999), the United States District Court applied the affidavit of merit statute to a claim of architectural malpractice arising out of a defective parking garage in Atlantic City. Plaintiffs, the estates of two sisters who died when their car dropped four stories within the garage, sued the project architect, Michael Demling ("Demling"), and his company, Michael Demling Associates ("MDA"). Demling and MDA moved to dismiss the negligence claims against them because plaintiff had not served a timely affidavit of merit. The District Court granted the motion, in an opinion by Judge Brotman.
With respect to Demling himself, Judge Brotman noted in Martin that Demling was an architect licensed by the State of New Jersey, and thus covered by the affidavit of merit requirement under N.J.S.A. 2A:53A-26(b). As to MDA, the entity defendant, Judge Brotman observed that not all corporations that perform architectural services in New Jersey need to obtain a license from the State Board of Architects, although their shareholders must be so licensed. Although MDA did not itself hold an architect's license, its principal, Demling, did. Given those circumstances, and considering the state courts' implicit application of the affidavit of merit statute to the entity defendants in Diver, supra, and Hyman Zamft, supra, *528 Judge Brotman concluded that the affidavit requirement likewise extended to MDA. Martin, supra, 37 F.Supp.2d at 366. The court inferred that "a business organization whose leadership is composed of `licensed persons' within the meaning of N.J.S.A. 2A:53A-26 is also considered a `licensed person' for purposes of the [a]ffidavit of [m]erit statute." Ibid.
In reaching his legal conclusions in Martin, Judge Brotman underscored the public policies underpinning the affidavit of merit statute:
This result is consistent with the purpose of the [a]ffidavit of [m]erit statute. The statute was designed to require plaintiffs to make a threshold showing that their claims have merit. It would thwart this purpose to require plaintiffs who make negligence claims against architectural corporations organized under N.J.S.A. 45:3-18 [which obtain architect licenses] to file affidavits of merit while excusing plaintiffs who make negligence claims against architectural corporations organized under N.J.S.A. 14A:17-5 [which are not so licensed] from satisfying this requirement.
[Ibid. (emphasis added).]
A different outcome was reached two years earlier in another decision from the United States District Court, RTC Mortgage Trust 1994 N-1 v. Fid. Nat'l Title Ins. Co., 981 F.Supp. 334, 347-50 (D.N.J. 1997). In RTC, a Pennsylvania law firm having no offices in New Jersey provided an allegedly erroneous opinion letter to its client on the requirements of New Jersey law applicable to a real estate transaction involving acreage in Mount Laurel. Id. at 337. After financial harm resulted from the law firm's poor advice, the mortgage assignee, RTC, sued various parties, including a claim against the law firm for legal malpractice. The law firm moved to dismiss the complaint for lack of service of an affidavit of merit.
Applying New Jersey law in a diversity jurisdiction context, the District Court, in an opinion of Judge Orlofsky, found in RTC that the affidavit of merit potentially applied to the situation. However, the court held that the defendant law firm was not entitled to the protection of the statute because it was not a "licensed professional" in New Jersey at the time the legal advice was rendered. Although members of the law firm held themselves out as "members of the bar of New Jersey," the firm had no office in New Jersey, and thus was in violation of the Supreme Court's "bona fide office" requirement in effect at the time. Id. at 348 (citing Rule 1:21-1(a) of the 1998 Court Rules, which then required licensed attorneys to maintain a bona fide office physically located within New Jersey). Consequently, the law firm was not qualified to practice law in New Jersey and the affidavit of merit statute should not apply. Id. at 348. Specifically, Judge Orlofsky stated that "an examination of the other categories of professions listed in N.J.S.A. 2A:53A-26 reveals that behind the use of the term `licensed' is a fairly clear legislative intent to reach those who could lawfully practice their professions in New Jersey." Id. at 349 (emphasis added). The judge added the following policy observations:
Additionally, in limiting the instances where an affidavit of merit is required to those practicing within the parameters established by the New Jersey Supreme Court, the statute may easily be read as providing a "shield" available only to those otherwise complying with state-mandated prerequisites to practice. Allowing those professionals who do not comply with such prerequisites to claim the protections of the statute seems, at best, anomalous, if not in direct contravention *529 of the state's policies regarding professional qualifications.
[Id. at 349 (emphasis added).]
Apart from Martin and RTC, we have also considered the United States District Court's opinion in In re Cendant Corp. Sec. Litig., 139 F.Supp.2d 585 (D.N.J.) ("Cendant II") a case relied upon here by plaintiff. Shareholders in Cendant Corporation ("Cendant") brought suit against various parties, including Ernst & Young, LLP ("E & Y"), an accounting firm that provided services in connection with Cendant's merger. See In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 235, 239-40 (D.N.J.2000) ("Cendant I"), aff'd 264 F.3d 201 (3d Cir.2001), cert. denied sub nom., Mark v. Cal. Pub. Employees Ret. Sys., 535 U.S. 929, 122 S.Ct. 1300, 152 L.Ed.2d 212 (2002). The shareholders alleged that the company's directors and accountants had knowingly misstated earnings during the period when the merger was being contemplated and completed. Id. at 240. Cendant filed cross-claims against E & Y, alleging, among other things, that E & Y committed professional malpractice in preparing financial statements for the merger. Cendant II, supra, 139 F.Supp.2d at 588. E & Y moved to dismiss the claims of malpractice on the ground that Cendant had not filed an affidavit of merit. Ibid. In response, Cendant primarily asserted that, because Connecticut law should govern the federal case, N.J.S.A. 2A:53A-27 did not apply, and thus the cross-claim should not be dismissed. Id. at 601. Cendant also pointed out that, although E & Y had a New Jersey office, that office apparently had nothing to do with the transaction, a merger between two Connecticut-based companies, which was serviced by accountants in E & Y's Connecticut office. Id. at 603.
In an opinion by Judge Walls, the District Court in Cendant II ruled, as a threshold matter, that Connecticut law applied to the matter. Id. at 603. Judge Walls found that the New Jersey affidavit of merit statute conflicted with relevant Connecticut laws, and therefore was inapplicable. Id. at 603-04. The judge specifically declined to address E & Y's status as a "licensed person" under the statute, noting that "[b]ecause this [c]ourt agrees with Cendant that the [a]ffidavit of [m]erit statute is inapplicable, it need not address Cendant's other arguments why its state law claims are not barred by the [New Jersey] statute." Id. at 601. In a footnote to that observation, the judge identified one of "Cendant's other arguments" as "that E & Y is not a `licensed person' within the meaning of the [affidavit of merit] statute." Id. at 601 n. 9.
Hence, Cendant II provides us with little guidance, as it simply identifies issues of statutory interpretation under N.J.S.A. 2A:53A-26 and -27 without actually deciding them. Moreover, the facts in Cendant II are dissimilar from the present case (as well as largely different from those in Martin and RTC), where the client injured by the alleged professional malpractice is from New Jersey and significant harm occurred within this State.

D.
In the absence of controlling precedent, we conduct our own examination of the statute and of the discrete circumstances before us. We perform that analysis mindful that the intent of the Legislature must be honored when construing a statute. "`The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language.'" Soto v. Scaringelli, 189 N.J. 558, 569, 917 A.2d 734 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)); see also State v. Gandhi, *530 201 N.J. 161, 167, 989 A.2d 256 (2010). A court should "`ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole.'" Soto, supra, 189 N.J. at 569, 917 A.2d 734 (quoting DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039). "Ultimately, a court's role when analyzing a statute is to give effect to the Legislature's intent as evidenced by the `language of [the] statute, the policy behind it, concepts of reasonableness and legislative history.'" D'Ambrosio v. Dep't of Health & Senior Servs., 403 N.J.Super. 321, 334, 958 A.2d 110 (App.Div.2008) (quoting Johnson Mach. Co. v. Manville Sales Corp., 248 N.J.Super. 285, 303-04, 590 A.2d 1206 (App.Div. 1991)).
We appreciate plaintiff's literal argument that N.J.S.A. 2A:53A-26(c) statutorily defines a "licensed person", in the context of a complaint for legal malpractice, as "an attorney admitted to practice law in New Jersey." We also recognize, as plaintiff emphasizes, that, under the Court Rules adopted by the Supreme Court, individual attorneys, not law firms, are literally "admitted" to practice law in this State. However, the Rules also recognize the lawful ability of attorneys to organize themselves in the practice of law in the form of various business organizations, such as law firm partnerships, limited liability companies, and professional corporations. See R. 1:21-1A to -1C.
It is an undeniable reality of the modern practice of law that attorneys ordinarily ply their craft within business entities. Those business entities have been created to serve clients more effectively, and also, in some respects, to limit the lawyers' personal liabilities to creditors as the risks of the profession have expanded. The days in which the private practice of law was almost exclusively populated by individual practitioners has long passed.[5] That being so, we doubt that the Legislature intended to penalize the legal profession by confining the important protections of the affidavit of merit statute to single-attorney law offices.
To be sure, individual attorneys admitted to the New Jersey bar are clearly embraced by the affidavit of merit statute by virtue of the definition in N.J.S.A. 2A:53A-26(c). But, if plaintiff's reading of the statute were accepted, that individualized protection would provide no solace to a law firm that could have vicarious liability for the actions or inactions of the licensed attorneys employed by, or affiliated with, that firm. See, e.g., Falzarano v. Leo, 269 N.J.Super. 315, 320, 635 A.2d 547 (App.Div.1993) (citing Malanga v. Mfrs. Cas. Ins. Co., 28 N.J. 220, 227, 146 A.2d 105 (1958)) (noting that "[i]t is fundamental that every member of a partnership is jointly and severally liable for torts committed by other members of the partnership acting within the scope of the firm business, even though they do not participate in, or ratify, or have knowledge of such negligence or legal malpractice"); see also R. 1:21C-1(a)(1) (applying "[a]ll provisions of the Uniform Partnership Act, N.J.S.A. 42:1A-1 through 56" to the practice of law by a limited liability partnership). Plaintiff presumably wishes to invoke principles of vicarious liability against *531 Klehr and Obermeyer to make those law firms financially accountable for the harm that Fields, or any of the law firms' other employees, caused by failing to assure that the '297 patent's renewal fees were timely paid to the USPTO.[6]
Indeed, the wording of the affidavit of merit statute contemplates such potential vicarious liability. Section 27 of the statute makes the affidavit requirement applicable to "any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation[.]" N.J.S.A. 2A:53A-27 (emphasis added). The provision's focus is on the resulting harm, not on the business forms of the named defendants.
The vicarious nature of the statute's intended effect was underscored in Martin, supra, by Judge Brotman. The judge noted that the affidavit of merit requirement would apply even where an unlicensed person employed by a licensed professional negligently caused harm. As Judge Brotman aptly wrote, "[b]ecause of the doctrine of respondeat superior, an affidavit [of merit] must also be provided where a negligent act committed by an unlicensed person in the course of his employment may be imputed to a licensed person." Martin, supra, 37 F.Supp.2d at 365. We agree.
Here, the errors or omissions that evidently led to the irrevocable loss of plaintiff's patent trace back to the time when Fields represented plaintiff while he was employed by Klehr in 1999 and in the first few months of 2000, and thereafter at Obermeyer from May 2000 through his departure from that latter firm in 2003.[7] During that 1999-2003 period, Fields remained an attorney who had been "admitted to practice law in New Jersey." To be sure, he became ineligible to practice law in the courts of this State, or to engage in non-federal practice in New Jersey, because of his failure to pay annual fees to the Client Protection Fund. However, Fields was not disbarred during that critical time period. Instead, by operation of the express terms of the Court Rules, his "membership in the [b]ar of this State" did not cease until September 26, 2005, when his license was revoked by the Supreme Court. R. 1:20-1(d). The amendment authorizing such revocation for attorneys who had not paid their annual fees for seven consecutive years, Rule 1:28-2(c), did not even come into effect until September 1, 2004, after the 1999-2003 conduct at issue in this lawsuit. See Pressler, 2005 N.J. Court Rules at 256, R. 1:20-1(d) (2005). We also note that in paragraph 12 of its complaint, plaintiff asserted that "[p]rior to his death on or about April 23, 2007, Fields was licensed to practice law in both Pennsylvania and New Jersey, as well as registered to practice before the USPTO."
The fact that Fields was on the New Jersey Supreme Court's ineligible list while he was employed at Klehr and Obermeyer did not necessarily mean that he was unauthorized to serve as plaintiff's patent attorney before the USPTO. A patent attorney is a designation exclusive to the federal patent bar. 37 C.F.R. 11.6(a). In order to maintain eligibility to *532 practice nationally as a patent attorney before the USPTO, the lawyer only needed to remain in good standing of the bar of one state. 37 C.F.R. 11.1.[8]
In this instance, it is undisputed that Fields maintained his admission in good standing at the relevant times in the bar of the State of Pennsylvania. That active Pennsylvania license, coupled with Fields's ongoing federal credential as a patent attorney, allowed him to continue to represent clients before the USPTO, including plaintiff, notwithstanding his inactive status within the New Jersey bar. The Supreme Court of New Jersey, by virtue of the Supremacy Clause, could not compel a federal agency or the federal court to enjoin Fields from practicing in those federal fora.[9] Hence, this is not a scenario akin to RTC, in which there was an evasion of the applicable "prerequisites to practice." RTC, supra, 981 F.Supp. at 349.
While Fields was still employed by Obermeyer and a dispute had arisen concerning plaintiff's obligation to pay counsel fees, in light of Fields's inactive New Jersey status, Fields sent a letter to plaintiff on July 18, 2001. In that letter, Fields "emphatically state[d] that the work [he] performed for [plaintiff] was pursuant to [his capacity] as a registered patent attorney and member of the Pennsylvania bar." Fields added that he "want[ed] to make it abundantly clear," notwithstanding his inactive status in the New Jersey bar, "that in no way has [his] representation of [plaintiff] been anything other than a proper representation of clients before the U.S. Patent and Trademark Office."
Because, as plaintiff conceded in its complaint, Fields was authorized to practice before the USPTO as a patent attorney and to represent a New Jersey client in that capacity, the affidavit of merit statute most sensibly should be construed to treat the law firms by whom Fields was so employed as "licensed persons" covered by the affidavit of merit statute. This conclusion is bolstered by the fact that both law firms, Klehr and Obermeyer, had lawfully established branch offices in this State staffed by resident attorneys admitted to the New Jersey bar.
We are not confronted here with a situation in which there was a surreptitious endeavor to evade or abuse the Supreme Court's practice requirements. Indeed, since 2004 the Court has relaxed the bona fide office rule so as to only require the licensee to maintain a qualified physical office in some state, not necessarily in New Jersey. R. 1:21-1(a). See Pressler Current N.J. Court Rules at 331, comment 1 to R. 1:21-1 (2010). Additionally, as in Martin, it has been represented to us, and not factually controverted by plaintiff, that one or more attorneys within each law firm's leadership was stationed in Cherry Hill. That added New Jersey nexus strengthens the propriety of requiring an affidavit of merit in this case.
Considering the record as a whole, we are persuaded that the Legislature would not have intended this scenario to be exempted from the rigors of the affidavit of merit requirement. As the motion judge rightly observed, it would be "entirely anomalous" to allow a plaintiff to circumvent the affidavit requirement by naming only law firms as defendants in a legal malpractice complaint and not the individual attorneys who performed the services. A statute should not be read in a crabbed *533 fashion that leads to anomalous results. Cesare v. Cesare, 154 N.J. 394, 405, 713 A.2d 390 (1998). The "salutary benefit" of the affidavit of meritin winnowing out unfounded malpractice claims, and in reducing burdens on parties, counsel, witnesses, jurors, and our publicly-funded state court systemlogically should apply to this case. Knorr, supra, 178 N.J. at 176, 836 A.2d 794.
We need not imagine or resolve today other hypothetical situations that might warrant a different analysis of the statute's applicability. Our holding should not, for example, lead to an automatic inference that all out-of-state law firms with bona fide offices or resident attorneys in New Jersey will be entitled to the protection of the affidavit of merit statute in any legal malpractice cases brought against such firms arising out of the conduct of any attorney employed by such firms, regardless of that attorney's state(s) of licensure. Nor does this opinion resolve the question of whether the statute would protect an attorney on the Supreme Court's ineligibility list who, unlike Fields, was not functioning as a patent attorney, but who instead was unlawfully representing clients in the state courts or in non-patent matters. Also, our disposition is limited to the necessity of an affidavit of merit in the discrete context of legal malpractice, and does not resolve the need for an affidavit in situations involving claims against the various business organizations of other licensed professionals. These and other hypothetical scenarios must await another day, or, alternatively, the prospect of legislative clarification through an amendment to the statute.
By no means do we intend our analysis to discourage attorneys admitted to the New Jersey bar from paying their annual fees to the Client Protection Fund. Those fees must be paid, as the Court Rules require, in order for an attorney to maintain his or her good standing to practice law in this State, unless such practice is otherwise authorized by federal law. In the present case, we have a distinctive circumstance in which Fields, as a duly-licensed patent attorney, could represent New Jersey clients lawfully before the USPTO without continuing to pay his annual fees to the Client Protection Fund. Because of that special USPTO status, the fact that Fields was on the New Jersey ineligible list is not dispositive of plaintiff's claims that an affidavit was not necessary. If, on the other hand, Fields had strayed from the boundaries of patent representation, and, in performing such tasks, caused harm to a New Jersey client, the need for an affidavit in that situation is far less apparent. In any event, we need not conclusively address such nuances here, except to caution New Jersey practitioners not to presume that ignoring their fee payment responsibilities will be inconsequential under N.J.S.A. 2A:53A-27.
We therefore affirm the motion judge's determination that the affidavit of merit statute applies to defendants Klehr and Obermeyer in the particular setting of this case.
We also reject, substantially for the reasons that the judge recited in his bench opinion, plaintiff's alternative argument that the affidavit of merit does not apply to its complaint because of the common knowledge doctrine. Although the parties agree that this state court has subject matter jurisdiction over the issues in this case,[10] the milieu of the alleged malpractice, *534 involving technical matters such as patent registration fees,[11] takes this case well out of the ken of an average juror. Hubbard ex. rel. Hubbard v. Reed, 168 N.J. 387, 394, 774 A.2d 495 (2001). We likewise concur with the trial court's application of the affidavit of merit statute to all of the claims asserted in the complaint, including those asserting more extreme forms of negligence or breach of duty. Couri, supra, 173 N.J. at 338-39, 801 A.2d 1134.

III.
Having concluded that the affidavit of merit obligation applies here as a matter of law, we turn to questions of remedy. Plaintiff argues, among other things, that it equitably should be excused from not tendering a timely affidavit because the trial court did not seasonably conduct a case management conference pursuant to Ferreira, supra, before the date upon which the affidavit would have become due. We need not adopt or reject that argument under Ferreira because there are independent and sufficient equitable grounds for affording plaintiff relief, particularly the unsettled state of the law at the time that defendants' answers were filed.
As we have already noted, until the instant opinion, there was no controlling precedent in our State's published case law providing a clear answer as to the necessity of an affidavit in a comparable scenario. The non-binding federal cases of potential relevance applying New Jersey law were not factually identical to the present case, and those cases arguably pointed to disparate results. Compare RTC, supra, 981 F.Supp. at 347-50 (finding the affidavit of merit statute inapplicable to the defendant law firm) with Martin, supra, 37 F.Supp.2d at 366 (finding the affidavit necessary). Although we ultimately were not persuaded by the legal arguments advanced by plaintiff for its interpretation of the statute, those arguments were not frivolous or insubstantial. We further note Fields's disavowal of active New Jersey licensure in his July 18, 2001 letter to plaintiff, an assertion which plaintiff could reasonably (albeit, in light of today's holding, mistakenly) have relied upon in initially assuming that an affidavit of merit was not required in this case. We also are mindful that plaintiff belatedly tendered in the Law Division an affidavit of merit, the contents of which have not been assailed by defendants.
Given the sparse and murky nature of prior decisional law, and the arguable ambiguity of the statute, we conclude in this unique setting that the dismissal orders entered by the trial court against both Klehr and Obermeyer should be equitably vacated, and that the interests of justice require that the case be remanded for discovery and other further proceedings. See Tischler, supra, 177 N.J. at 246-47, 827 A.2d 1036 (noting that equitable factors may be applied in appropriate exceptional instances to excuse strict compliance with affidavit of merit requirements).
*535 Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] The limited record before us does not indicate whether MacNeil forwarded the USPTO's reminder notice to plaintiff or Klehr, or whether he otherwise alerted them to the non-payment problem.
[2] The invalidity of the reissue patent is not disputed for the purposes of this appeal.
[3] Plaintiff was unable to perfect service upon National, a defunct entity. Consequently, its claims against National were dismissed by the court pursuant to Rule 1:13-7 for lack of prosecution. Since the dismissed claims against National do not bear upon the issues before us, we shall hereafter refer to the remaining defendants, Klehr and Obermeyer, as "defendants" or "the law firms."
[4] The statute allows the original 60-day period for serving an affidavit to be extended an additional 60 days, upon a judicial finding of good cause. N.J.S.A. 2A:53A-27.
[5] We recognize that a sizeable number of lawyers in our State continue to practice as solo practitioners. As of 2008, about one-third of the 34,154 attorneys in private practice in New Jersey identified themselves as solo practitioners. Office of Attorney Ethics, 2008 State of the Attorney Disciplinary System Report 119 (2009). That statistic does not signify, however, that the Legislature intended to limit the affidavit of merit statute, a sweeping tort reform measure, to law practices that are so organized.
[6] Our comments should not, of course, be construed as any definitive ruling as to whether Klehr or Obermeyer actually has vicarious liability for the errors and omissions that have been alleged in this case. Such a determination would require factual development and appropriate findings in the trial court.
[7] We ignore any potential negligence by Fields subsequently at National, since it is defunct and no longer a party to the litigation.
[8] Under 37 C.F.R. 11.6(b), any individual who fulfills the technical and character requirements, but is not an attorney, may serve as a "patent agent" before the USPTO.
[9] Cf. L. Civ. R. 101.1(e) (establishing special rules for patent attorneys to be admitted to practice in the United States District Court for the District of New Jersey).
[10] See 28 U.S.C.A. § 1338(a) (providing for exclusive jurisdiction in the federal courts over claims "arising under any Act of Congress relating to patents, plant variety protection, copyrights[,] and trademarks"); but see Singh v. Duane Morris LLP, 538 F.3d 334, 338 (5th Cir.2008) (dismissing legal malpractice case removed from state court for lack of federal question jurisdiction because the substantive federal trademark issues involved were only tangential to the malpractice claims).
[11] We have not been asked to decide, and do not reach, the choice of law governing the standards of care in this case, and, in particular, whether the applicable standards are those of a federal patent attorney, a New Jersey attorney, a Pennsylvania attorney, or some other formulation.