**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3176-17T3

JOANNE N. YUHASZ, individually,
and as Power of Attorney for DIANA
S. YUHASZ, (a Ninety-Five (95)
Year-Old Elderly Female) and Other
Family Members Similarly Situated,

     Plaintiff-Appellant,

v.

GENESIS HEALTHCARE, LLC,[1]
200 REYNOLDS AVENUE
OPERATIONS, LLC,[2] CAREONE
AT MORRIS, DR. ANDREW P.
GILMARTIN, M.D. (in his
professional and personal capacities),
DR. FRANK IANETTA (in his
professional and personal capacities),
CHANGEBRIDGE MEDICAL
ASSOCIATES, P.A., CAREONE
HANOVER, HEALTHBRIDGE
MANAGEMENT, LLC, and DES
HOLDING CO., INC.,

     Defendants-Respondents,

---

[1] Improperly pled as Genesis Healthcare.

[2] Improperly pled as Troy Hills Center.

and

MICHAEL SHIPLEY, Vice President
of Operations, BRIAN FASZCZEWSKI
(in his professional and personal
capacities), NANCY PROKO (in her
professional and personal capacities),
JOSEPH SCHMIDT (in his professional
and personal capacities), DR. ARTHUR
SHEPPELL, M.D. (in his professional
and personal capacities), PAUL A.
MAFFEI, BS, RN, Hospital Clinical
Liaison (in his professional and
personal capacities), and DR. WILLIAM
GRELLA, M.D, (in his professional
and personal capacity and as President
of Integrated Hospital Medicine),

     Defendants.

_____

> Argued telephonically May 2, 2019 –
> Decided June 6, 2019
>
> Before Judges Whipple and Firko.
>
> On appeal from Superior Court of New Jersey, Law
> Division, Morris County, Docket No. L-2195-16.
>
> Joanne Yuhasz, appellant, argued the cause pro se.
>
> Shane P. Simon argued the cause for respondents 200
> Reynolds Avenue Operations, LLC d/b/a Troy Hills
> Center and Genesis HealthCare, LLC (Buchanan
> Ingersoll & Rooney, PC, attorneys; David L. Gordon
> and Shane P. Simon, of counsel and on the brief).

2

Anthony Cocca argued the cause for respondents CareOne at Morris, CareOne Hanover, HealthBridge Management, LLC, and DES Holding Co., Inc. (Cocca & Cutinello, LLP, attorneys; Anthony Cocca, of counsel and on the brief).

Arnold R. Gerst argued the cause for respondents Andrew P. Gilmartin, M.D., Frank Ianetta, M.D. and Changebridge Medical Associates (Weiner Law Group LLP, attorneys; Arnold R. Gerst, of counsel and on the brief).

PER CURIAM

In this professional negligence case, plaintiff Joanne N. Yuhasz appeals from the January 23 and 30, 2018 Law Division orders dismissing her second amended complaint with prejudice against defendants CareOne at Morris, Dr. Andrew P. Gilmartin, Dr. Frank Ianetta, and Changebridge Medical Associates, P.A. for failure to serve appropriate affidavits of merit (AOM), failing to state a cause of action, and denying her motion for leave to file and serve a third amended complaint.[3]  We affirm.

---

[3]  At oral argument, plaintiff confirmed she is the only plaintiff in this action. Therefore, any standing and other issues in respect of her mother, Diana S. Yuhasz, and other family members similarly situated, are moot, and will not be addressed in this opinion.

I.

A motion to dismiss for failure to provide an AOM is equivalent to a motion to dismiss for failure to state a cause of action. N.J.S.A. 2A:53A-29. As a result, we recite the facts in the light most favorable to plaintiff. Nostrame v. Santiago, 213 N.J. 109, 113 (2013). As to plaintiff's other allegations, we review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the trial court. See Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010). A trial court should grant the dismissal "in only the rarest instances." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772 (1989). Such review "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint[,]" and in determining whether dismissal under Rule 4:6-2(e) is warranted, the court should not concern itself with the plaintiff's ability to prove those allegations. Id. at 746. If "the fundament of a cause of action may be gleaned even from an obscure statement or claim[,]" then the complaint should survive this preliminary stage. Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 626 (1995) (quoting Printing Mart-Morristown, 116 N.J. at 746). "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a

generous and hospitable approach." Printing Mart-Morristown, 116 N.J. at 746. We discern the following facts from plaintiff's second amended complaint, giving plaintiff the benefit of all reasonable factual inferences. See ibid.

## II.

In 1998, plaintiff was appointed as her mother, Diana S. Yuhasz's, power-of-attorney, "legal caregiver," and she was given "full and complete medical authorization on her mother's behalf." According to plaintiff, her mother was diagnosed with dementia in October 2012, but she was reading, sewing, cooking, watching television, and making purchases on QVC without plaintiff's assistance. In September or October 2012, mother "was overdosed with the prescription drug Mirapex[4] by her then neurologist Dr. Walter Husar," and thereafter, she began "screaming nonstop and exhibiting erratic behavior."

From December 10 to 13, 2012, mother was admitted to defendant, 200 Reynolds Avenue Operations, LLC, referred to as Troy Hills Center for Rehabilitation (Troy Hills) by plaintiff, following a hospitalization. Three days

---

[4] "Mirapex (pramipexole) is a prescription drug used to treat the signs and symptoms of Parkinson's disease and moderate to severe symptoms of primary restless legs syndrome. It is in a class of medicines called dopamine agonists." Mirapex (pramipexole) Information, U.S. Food & Drug Administration, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mirapex-pramipexole-information (last visited May 24, 2019).

later, mother was discharged by defendant, Dr. Arthur Sheppell, who ostensibly failed to advise plaintiff of her mother's mental state, or evaluate her psychological condition. Plaintiff alleged defendants falsely stated to hospitals, social workers, and other care facilities, that she removed her mother from Troy Hills against Dr. Sheppell's advice, and negligently cared for her mother in an effort to conceal defendants' own intentional abuse and neglect.

From January to March of 2013, plaintiff's mother was admitted to CareOne for short-term, subacute rehabilitation. Plaintiff alleges CareOne and Sheppell failed to address her mother's mental condition, and left her alone while she was screaming. Mother contracted pneumonia and was hospitalized. After her discharge, she was transferred to Morris View Healthcare Center, where plaintiff alleges her mother was ignored during the night while "having a heart attack," and that her mother was not medicated for excruciating stomach pain. Plaintiff also alleges her mother was "diagnosed with a high white cell count, inflamed colon[,] and a C-Diff bacterial infection subjecting [her] to isolation for up to four months." After this incident, plaintiff alleges "social workers and other facilities ha[ve] prevented [p]laintiff from obtaining the appropriate diagnosis and medical treatment for her elderly mother."

A-3176-17T3

In spring of 2015, mother was admitted to CareOne at Hanover. Prior to her mother's admission, plaintiff requested her mother's primary care physician, Dr. Michael Nicolai, confer with Dr. William F. Grella at Hanover, regarding her mother's mental health management. Plaintiff hoped her mother could benefit from speech, swallowing, and physical therapy at Hanover. On July 7, 2015, plaintiff met with Joseph Schmidt, the Troy Hills administrator, who advised plaintiff her mother was "permanently red-flag[ged]" because of plaintiff's August 1, 2013 letter to Brian Faszczewski, and one or two subsequent e-mails by plaintiff to Genesis, notwithstanding the fact Dr. Sheppell discharged her mother from Troy Hills in December 2012. On July 7, 2015, plaintiff also met with nurse Paul A. Maffei, a hospital clinical liaison for CareOne at Morris and Hanover, who "informed plaintiff that CareOne Morris steadfastly refused to admit her elderly mother and that he didn't have to tell plaintiff the reason for their refusal." On July 9, 2015, plaintiff's mother was admitted to Pine Acres Healthcare and Rehabilitation Center where she developed severe acid reflux, resulting in her admission to St. Clare's on September 29, 2015, where she was diagnosed with lethargy and dehydration. Plaintiff alleged the doctors at Hanover did not confer as she requested, and instead, they fraudulently required

her to pay for her mother's room and board at a monthly rate of $8,100, plus an additional $2,975, for aides required due to her mother's altered mental state.

On September 29, 2016, plaintiff filed suit against defendants alleging defamation, libel, slander, fraud, nursing home abuse, neglect, constitutional violations, American with Disabilities Act violations, breach of contract, misdiagnosis, and falsification of medical records. An amended complaint was filed by plaintiff on April 17, 2017 asserting ten causes of action, and a thirteen-count second amended complaint was filed on June 19, 2017 alleging:

(1) Alter ego, agency, and joint enterprise (Count I);
(2) Defamation/defamation per se (Count II);
(3) Fraud/breach of contract (Count III);
(4) Violations of New Jersey's Nursing Home Responsibilities and Rights of Residents Act (the "NHA") N.J.S.A. 30:13-1 to -17, by way of nursing home abuse/neglect, negligence per se, deviation from the standard of care, and gross neglect (Count IV);
(5) Medicare/Medicaid misrepresentation and fraud (Count V);
(6) Punitive, special, consequential, and exemplary damages (Count VI);
(7) Intentional infliction of emotional distress (IIED) (Count VII);
(8) Age discrimination/mental state (Count VIII);
(9) Retaliation/violations of First Amendment/ CEPA[5] Count IX);

---

[5] Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14.

A-3176-17T3

(10) Violations of the NHA by way of serious bodily
injury based on nursing home abuse and neglect
(Count X);
(11) Consumer Fraud (Count XI);
(12) Respondeat Superior (Count XII); and
(13) Apparent authority (Count XIII).

The second amended complaint averred that on September 29, 2015, a social worker employed at St. Clare's Denville Hospital requested mother's admittance to Troy Hills for short-term, subacute nursing and rehabilitation to be paid for by Medicare, but Troy Hills rejected mother because she was "red-flagged" due to the 2012 incident when plaintiff discharged her mother against Dr. Sheppell's orders. CareOne at Hanover declined to accept mother based upon allegedly false statements asserting plaintiff failed to follow her mother's food instructions or pay her bill. CareOne initially refused to admit mother because of her "altered mental state" rendering her a "danger to herself and others," but later relented and admitted her.

Two hours after being admitted to CareOne, defendant Dr. Andrew P. Gilmartin, a Changebridge employee and internist, ordered plaintiff's mother to be transported to an emergency room, but she was discharged because she did not manifest any physical ailments warranting admission. Plaintiff called Changebridge and spoke to defendant, Dr. Frank Ianetta, also a Changebridge employee, with a specialty in family medicine, who advised plaintiff her mother

should be admitted to St. Clare's or Ramapo; and his preference was the latter. According to plaintiff, Dr. Ianetta failed to inform her that Ramapo was a psychiatric hospital. On June 20, 2015, plaintiff's mother was admitted to Christian Health Care Center under the care of Dr. Igor Gefter, a psychiatrist.

In May 2017, plaintiff herself was hospitalized and diagnosed with a herniated disc, causing her extreme back and knee pain. She could not ambulate, and was discharged from the hospital to rehabilitation, but Troy Hills, CareOne at Morris, and CareOne at Hanover, all refused to accept plaintiff as a patient because of animosity resulting from previously arranging care for her mother. Consequently, on May 19, 2017, plaintiff was admitted to Franciscan Oaks Health Center and Assisted Living, where her mother stayed from January until March 2013. Plaintiff claims the director of nursing at Franciscan Oaks immediately started "threatening" and "bullying" her. After Dr. Sheppell was assigned to her care, plaintiff protested and requested another doctor, but no doctor wanted to get involved with her care. The nurse "threatened plaintiff with discharge knowing full well that plaintiff lived alone and was unable to walk or care for herself at this time," and the nurse was "hostile, nasty, and abusively bullying."

A-3176-17T3

Plaintiff claims she is disabled and requires knee replacement surgery but cannot proceed with the surgery because she "is barred from admission to every rehabilitation facility in Morris County and owned by Genesis and CareOne." Having no alternative, she must be cared for at home, at a cost of $55 hourly for nurses and $26 to $29 hourly for home health aides. She also alleged her brother was barred from admission to Morris County CareOne and Genesis Centers.

On July 28, 2017, defendants CareOne at Morris, CareOne Hanover, HealthBridge Management, LLC, Genesis, and DES Holding Co., Inc. moved to dismiss plaintiff's second amended complaint, in lieu of filing an answer, pursuant to Rule 4:6-2(e) for failing to state a cause of action. Defendant 200 Reynolds Avenue joined in the motion. Defendants Gilmartin, Ianetta, and Changebridge Medical Associates moved to dismiss plaintiff's second-amended complaint for failing to serve AOMs. During an August 2, 2017 conference, plaintiff indicated to the judge that she "did not need to serve [AOMs] against the [d]octor [d]efendants, given her perceived nature of the allegations proffered against them." She failed to request a sixty-day extension to file AOMs, claiming the nature of the allegations against the doctors sounded in contract and fraud, thereby dispensing with the need to file AOMs.

Plaintiff filed a cross-motion for leave to file and serve a third amended complaint, alleging in relevant part:

> Fraudulent Breach of Contract and Unlawful Commitment to a Psychiatric Hospital Based on Fraud [d]efendants Gilmartin, Ianetta[,] and Changebridge
>
> . . . .
>
> 161. By virtue of the acceptance of [CareOne] and Dr. Andrew P. Gilmartin to admit and care for [the mother], there was in effect between [CareOne] and Gilmartin and the [p]laintiff an oral, expressed, verbal and/or implied contract.
>
> 162. [CareOne] and Gilmartin breached such oral, expressed, verbal and/or implied contract with [p]laintiff by refusing to care for [the mother] by ordering that [the mother] be removed from [CareOne] solely because of the mental state of [the mother].
>
> 163. By virtue of telephonic conversation between [d]efendant Dr. Frank Ianetta, acting on behalf of [Changebridge], there was in effect between [d]efendant Ianetta/Changebridge and [p]laintiff an oral, expressed, verbal and/or implied contract.
>
> 164. Defendants Ianetta/Changebridge breached such oral, expressed, verbal and/or implied contract with [p]laintiff by fraudulently advising [p]laintiff to admit her elderly mother to Ramapo against her mother's will.
>
> 165. Defendants Ianetta/Changebridge further breached their contract with [p]laintiff by failing to examine [the mother] and/or to have [the mother] examined by two psychiatrists.

12

On January 23, 2018, Judge Stuart A. Minkowitz dismissed plaintiff's second amended complaint with prejudice against Gilmartin, Ianetta, and Changebridge Medical Associates, for failing to comply with the AOM statute finding:

> Plaintiff had sixty (60) days or until September 11, 2017, to provide an [AOM]. Even though she was offered an extension at the conference between the parties on August 2, 2017,[6] plaintiff failed to submit an [AOM]. To date, plaintiff has failed to provide [d]efendants with an [AOM]. Therefore, to the extent [p]laintiff claims medical malpractice or negligence, the court finds no basis for [p]laintiff's obligations under the [AOM] statute.

The judge rejected plaintiff's argument no patient/physician relationship existed, and that the nature of her claim against the healthcare providers was simply "administrative" or "for the sole purpose of aiding [CareOne at Morris] to deny admission" to her mother.

On January 30, 2018, the trial court granted Genesis and CareOne's motions to dismiss plaintiff's second amended complaint pursuant to Rule 4:6-2(e) for failing to state a cause of action, and denied plaintiff's cross-motion for leave to file and serve a third amended complaint. The judge found plaintiff was no longer seeking relief on behalf of anyone except herself, thus claims

---

[6] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151 (2003).

previously advanced on behalf of her mother for age discrimination and mental state issues (counts four, eight, and ten) were moot.

With regard to plaintiff's defamation claim (count two), the trial court found the cause of action was barred by the one-year statute of limitations because the alleged defamatory statements were made prior to September 29, 2015.

Plaintiff's claims sounding in fraud, including the Medicare and Medicaid misrepresentation claim (count five), and breach of contract claim (count three), were dismissed because they were not pled with factual specificity and plaintiff failed to prove she was a party to any contract with defendants.

The trial court dismissed plaintiff's intentional infliction of emotional distress claim (count seven) on the grounds she failed to plead "outrageous conduct" by defendants, or that plaintiff "sustained an actual severe and disabling emotional or mental condition" as a result thereof.

The trial court also found plaintiff's retaliation claims under CEPA (count nine) were likewise not adequately pled or sustainable because none of the defendants were plaintiff's employer. The trial court reached a similar finding with regard to plaintiff's First Amendment claim, concluding none of the defendants acted under color of state law.

14

Plaintiff's punitive damage claim (count six) was dismissed for her failure to plead actual malice, or wanton and willful conduct. Plaintiff's respondeat superior claim, (count twelve), alter ego, agency, and joint enterprise (count one), and apparent authority (count thirteen) claims were dismissed because their underlying causes of action were stricken.

The trial court also denied plaintiff's motion for leave to file and serve a third amended complaint, which proposed to add factual support for the fraud and defamation claims, rescind claims on behalf of plaintiff's mother and "other family members similarly situated," and add a count for "fraudulent breach of contract and unlawful commitment to a psychiatric hospital based on fraud" against the Changebridge defendants. Again, the trial court noted that the defamation claims were barred by the statute of limitations, and the fraud claims were unsupported by any knowledge of collective conduct between defendants.

On appeal, plaintiff argues that the judge erred in dismissing her second amended complaint for failing to serve appropriate AOMs, dismissing her other causes of action, and for denying her cross-motion for leave to file and serve a third amended complaint.

A-3176-17T3

III.

Affidavit of Merit

We exercise plenary review of the trial court's order dismissing plaintiff's complaint. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011); R. 4:6-2(e). A motion to dismiss pursuant to Rule 4:6-2(e) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. See R. 4:6-2(e). Because statutory construction is a legal issue subject to de novo review, Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014), we review de novo the court's interpretation of N.J.S.A. 2A:53A-27, and its determination that plaintiff was required to serve AOMs. We review issues of law de novo and accord no deference to the judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

An AOM is "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject to the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. It must be filed within sixty days after a defendant files an answer, which the court may extend one time for no more than another sixty-

16

day period. Ibid. The AOM statute is designed to require plaintiffs in a professional negligence action to show that their claims have merit, so that those that do not can be dismissed at an early stage of the litigation. Buck v. Henry, 207 N.J. 377, 393 (2011).

The AOM statute requires a plaintiff filing suit against a licensed professional to have the case evaluated by an appropriately licensed person who will then attest under oath, "that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. "The stated purpose of the AOM statute is laudatory—to weed out frivolous claims against licensed professionals early in the litigation process." Meehan v. Antonellis, 226 N.J. 216, 228 (2016) (citation omitted). The other primary concern, which together constitutes the AOM statute's "dual purpose," is permitting "meritorious claims to proceed efficiently through the litigation process[.]" Id. at 229; Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 395

(2001), superseded by Affidavit of Merit Statutory Amendment L. 2001, c. 372, § 1, N.J.S.A. 2A:53A-26 to -29, as recognized in Meehan, 226 N.J. at 228.[7]

Therefore, the AOM's objective is to "require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious," Shamrock Lacrosse, Inc. v. Klehr & Ellers, LLP, 416 N.J. Super. 1, 14 (App. Div. 2010) (quotation omitted), not to prove, at this stage, the allegations in the complaint. The statute is not concerned with whether a plaintiff can actually prove the allegations of the complaint, but only whether a threshold showing of merit can objectively be made. Hubbard, 168 N.J. at 394.

In an effort to avoid unnecessary delay and resolve disputes between the parties regarding the need to provide an AOM, and to avoid dismissal of meritorious claims brought in good faith, our Court has "developed a prophylactic measure to encourage the timely filing of affidavits[:]" Ferreira conferences. Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 423 (2010) (citing Ferreira, 178 N.J. at 154-55). A Ferreira conference is "an accelerated case management conference [to] be held within ninety days of the service of an answer" in all professional negligence cases to "ensure that

---

[7] Although the statutory amendment was enacted after the Hubbard case, the amendment aligns with, and indeed reflects, the Legislature's intent, and the Hubbard Court's interpretation of the AOM statute as a whole.

discovery related issues, such as compliance with the [AOM] statute, do not become sideshows to the primary purpose of the civil justice system -- to shepherd legitimate claims expeditiously to trial[.]" Ibid. (first and third alterations in original) (quoting Ferreira, 178 N.J. at 154). In this way, any factual question regarding a defendant's status as related to the allegations of negligence in a plaintiff's complaint can be resolved. See Murphy v. New Road Constr., 378 N.J. Super. 238, 241-42 (App. Div. 2005).

"By not producing an [AOM], [a] plaintiff may be seen to have placed all his eggs in the ordinary negligence basket without alleging professional negligence as well." Murphy, 378 N.J. Super. at 243. Although a plaintiff aware of the AOM requirements is free to conclude an AOM is not necessary, if that conclusion is incorrect and the requisite time period for filing has passed, the complaint must be dismissed. Paragon, 202 N.J. at 423 (stating "an attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice"); Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 121 (App. Div. 2011). Here, a Ferreira conference was conducted and plaintiff was placed on notice of her need to file timely, appropriate AOMs.

Case law dictates that the threshold for any exception to the AOM statute is a high bar. See Ferreira 178 N.J. at 151. ("[T]wo equitable remedies . . .

temper the draconian results of an inflexible application of the statute. A complaint will not be dismissed if the plaintiff can show . . . he has substantially complied with the statute. Moreover, a complaint will be dismissed without prejudice if there are extraordinary circumstances to explain noncompliance." (citations omitted)).

Plaintiff argues that the conduct of defendant doctors was "administrative" in nature and no patient/physician relationship was created because she was not admitted into a healthcare facility as requested. We also disagree with her position that Dr. Gilmartin's only role was ministerial "for the sole purpose of aiding [CareOne at Morris] to deny admission" to her mother. We also find no exceptions or extraordinary circumstances here, and an appropriate AOM was required as to each defendant doctor. As our Supreme Court has stated, if "proof of a deviation from the professional standard of care for [the] specific profession . . . is required, an [AOM] shall be mandatory for that claim, unless either the statutory, or common knowledge exceptions apply." Couri v. Gardner, 173 N.J. 328, 341 (2002) (citation omitted).

Breach of Contract Claims

The trial judge concluded:

> In order to have standing to enforce a contractual agreement, [p]laintiff must demonstrate that she is a

party to a contract between herself and the named [d]efendants, which she is unable to do. Even if the [c]ourt were to consider [p]laintiff's breach of contract claim on an equitable basis, [p]laintiff would still need to prove that she suffered a "detriment of a definite and substantial nature . . . in reliance on the promise" purportedly made by [d]efendants, which she has not done.

We agree. The record reveals plaintiff was not a party to any contract tied to her allegations in either her second amended complaint or her proposed third amended complaint and she failed to substantively allege the necessary elements for an equitable breach of contract claim. As noted by the trial judge, the second amended complaint "does not actually allege or plead that there was any contract between the parties."

Paragraph 124 of the second amended complaint alleges: "The deliberate and intentional conduct of [d]efendant Troy Hills Center of discharging [p]laintiff's elderly mother in December 2012 and lying to [p]laintiff with regard thereto, constituted a breach of contract and violation of State and Federal Law protecting the elderly based on fraud and negligence." Contrary to plaintiff's assertion, no contract existed and the trial judge's analysis was correct.

Fraud Claims

Plaintiff argues the trial judge erred in dismissing her alleged claims of fraudulent conduct, fraudulent conspiracy, and contract by fraud by the CareOne

defendants in respect of Medicaid and Medicare representations, and they acted in unison to defraud. Again, we are unpersuaded by plaintiff's arguments and we agree with the trial judge she cannot "reserve[] the right to proceed with evidence of probable fraud after discovery." A cause of action for fraud is not even "suggested" by the facts, Rule 4:6-2(e), because nothing was pled by plaintiff "as to what, specifically, was misstated or misrepresented." The fraud claims are stated in a conclusory fashion, and were properly dismissed under Rule 4:5-8(a) as insufficiently pled.

Defamation Claims

Plaintiff argues she only asserted defamation claims on behalf of herself. Her argument lacks merit because the defamation allegations were aptly found by the trial judge to fail to plead facts "sufficient to identify the defamatory words, their utterer[,] and the fact of their publication." We agree with the trial judge the defamation claims were time-barred and plaintiff lacked standing to pursue them.

Plaintiff admits she "was unaware of the collective conduct of Troy Hills Center, CareOne Morris and CareOne Hanover defaming [her] character and position as [her] mother's legal caregiver until after September 29, 2015, when [she] began trying to obtain and review [her] mother's medical records and

letters to physicians." In the specific context of a defamation claim, N.J.S.A. 2A:14-3 provides for a one-year statute of limitations from the date of the "publication" of the alleged utterance to a third party, "not the date of [plaintiff's] discovery of the allegedly defamatory statements that is legally determinative," as noted by the trial judge. There is simply no basis for a cause of action for defamation here.

IV.

Lastly, plaintiff argues the trial judge erred in denying her cross-motion for leave to file and serve a third amended complaint since that "is the accepted legal procedural remedy afforded [t]o plaintiffs confronted with motions to dismiss their complaint for failing to state a cause of action." She further contends the "instant cause of action was timely filed on September 29, 2015, which was the last day within the statute of limitations barring [p]laintiff from filing an amended complaint[.]"

Based upon our careful review of the record, we agree with the trial judge that plaintiff's proposed third amended complaint "does not cure the defects present in both her [s]econd and [t]hird [a]mended [c]omplaints." The thrust of the third amended complaint was a reiteration of plaintiff's defamation claim previously found barred by the statute of limitations, and it does not "fix any

23

deficiencies" in the prior pleading. As to plaintiff's fraud claims, we agree with the trial judge plaintiff failed to specify with particularity the purported fraudulent acts. R. 4:5-8(a). The burden is on plaintiff to establish sufficient facts that, if proven, would establish fraud, the elements of which are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Applying these principles here, we discern no error in the trial judge's ruling that the proposed third amended complaint "does not cure the lack of foundation for [p]laintiff's claims" and is "nearly identical to the [s]econd [a]mended [c]omplaint."

Accordingly, the third amended complaint would have been futile and plaintiff's motion was properly denied. Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3176-17T3